(4 Misc. Rep. 315.)

ARMITAGE v. FISHER et al.

(Supreme Court, Special Term, Schoharie County. July, 1893.)

1. CITY COUNCIL—ADOPTION OF RULES—NOTICE—TWO-THIRDS VOTE.
Laws 1883, c. 298, § 34, provides that no by-law of the council shall be repealed or rescinded unless by a two-thirds vote of all the members of the council of the city of Albany. Section 7 of said act, as amended by Laws 1886, c. 444, Laws 1891, c. 286, provides that the common council of such city shall determine its own rules, and may expel a member under certain circumstances. Rule 34 provides that no rule shall be altered, suspended, or rescinded except by a two-thirds vote of all the members elected, and no motion for such purpose shall be considered until after notice at a previous meeting, unless by unaminous consent. *Held,* that a rule could not be amended by a majority vote of the council, no notice of the application having been given at a previous meeting.

2. SAME—OVERRULING DECISION OF PRESIDENT.
The fact that·the decision of the president that the rule had not been adopted for want of a two-thirds vote in its favor was overruled on appeal by a majority vote of the council will not render the amendment valid.

3. SAME.
The appointment of a committee to investigate and report on the conduct of the president, under the amended rule, was in violation of the rules of the council and the rights of the president.

4. EQUITY JURISDICTION—CONTROL OF COUNCIL.
Equity will restrain the council from acting through a committee so appointed for the purpose of investigating the conduct of the president. and expelling him from the council.

Bill by Armitage, president of the board of aldermen of the city of Albany, against Fisher and others, members of the common council, enjoining them from acting on a repeal of a committee. Plaintiff moves to continue an injunction pendente lite. Granted.

Stedman, Thompson & Andrews, for plaintiff.

John A. Delehanty, for defendants.

MAYHAM, J. This is an application upon an order to show cause why a pendente lite injunction heretofore granted in this action should not be continued until the final hearing and determination of the same. The action is prosecuted by the plaintiff, who is an alderman and president of the board of aldermen of the city of Albany, against the other members of the common council of the city of Albany, to restrain and enjoin them from acting upon any report of a committee appointed to consider and report upon charges made against the plaintiff in such wise as to

remove the plaintiff from his office and position as president of the common council, or otherwise to interefere with the plaintiff in the execution of his duties as president of the common council, and that it may be adjudged that the rules purporting and pretending to have been adopted by said common council on the 5th day of June, 1893, are not the rules of said common council, and that the said common council be enjoined and restrained from acting upon such pretended rules, or from taking any action or proceeding against the plaintiff, based upon said pretended rules, or from removing the plaintiff from his office and position as president of the common council of the city of Albany upon any pretended proceeding or authority given by such pretended rules.

The complaint alleges that the plaintiff was elected president of the common council on the 3d day of May, 1892, and at the time of said election he was an alderman at large of the city of Albany. The complaint also alleges that the plaintiff and defendants constitute the members of the common council of the city of Albany, and that the city of Albany is a municipal corporation, and duly incorporated under the laws of the state of New York. The complaint sets forth in haec verba section 7 of title 3 of chapter 298 of the Laws of 1883, as amended by Laws 1886, c. 444, Laws 1891, c. 286, entitled "An act to provide for the government of the city of Albany." That section provides that the common council shall biennially elect a president from its own body, and, in his absence, a president for the time being. The section also provides for a clerk, and that the common council shall hold regular meetings on the first Tuesday of May in each year. It also provides that the common council "shall determine the rules of its own proceedings, except as herein otherwise provided; be the sole judge of the qualifications and election of its members; keep a journal of its proceedings; and may punish or expel a member for disorderly conduct or a violation of its rules, or declare his seat vacated by reason of absence, provided such absence be continued for the space of two months. But no expulsion shall take place except by the vote of two-thirds of all members elected, nor until the delinquent member shall have had an opportunity to be heard in his defense." The complaint also alleges that the plaintiff has, from the time of his election up to the time of the commencement of this action, acted as alderman at large and president of the common council, and is still so acting; and that ever since his election certain rules for the government of the common council have been in force, among which there was included rule 34, as follows:

"No rule of this counsel shall be altered, suspended or rescinded, unless by a two-thirds vote of all the members elected, and no motion to alter, suspend, or rescind any such rule shall be in order without the unanimous consent of the council, unless notice thereof shall have been given at the previous regular meeting, and no motion to suspend shall embrace more than the one specified in said motion."

The complaint also alleges that at a meeting of the common council, held on the 3d day of June, 1893, the committee on rules of that body made a report recommending the adoption of certain

rules, among others, rule 34, as above recited. The complaint also alleges that rule 33 was attempted to be amended or modified and changed so as to read as follows:

"When any member of the common council shall be charged (which charge shall be in writing and presented at a meeting of the common council) with any violation of law or ordinance of said city, or resolution, rule, or regulation of said council, the matter shall be referred at said meeting to a committee of investigation of not less than five. In case the charge is preferred against the president of the common council, said committee shall be named and appointed by a vote of the common council; except in case the committee is named by the common council, the member shall have the right to object to not more than two members named on said committee, and the member complaining or charging shall have the same privilege, and other members shall be appointed to fill the vacancy thus created. The member charged shall be served with a copy of said charges, and notice when said committee shall hear the same, or the time to which it shall be adjourned, to examine the same, and of whom it shall report to the council. When the report of any committee of investigation shall be considered, the council may order a secret session for that purpose."

The complaint also alleges that a resolution was offered at said meeting by Alderman Brown that such report be accepted, and the rules as reported be adopted as the rules of the council, and that the plaintiff, as president, put the motion on the adoption of the resolution, on which motion 11 of the aldermen voted in the affirmative and 7 in the negative, and the president declared the resolution lost, two-thirds not having voted in its favor. That upon this announcement by the president, an appeal was taken by an alderman from the decision of the chair, whereupon the president put the question, "Shall the decision of the chair stand as the decision of the board?" upon which question 7 aldermen voted in the affirmative and 11 in the negative. The complaint also alleges that this plaintiff, the president of the common council, ruled and decided, notwithstanding the appeal from his decision was sustained, that the new rules proposed by the committee had not been adopted, for the reason that two-thirds of the members elected had not voted for the same. The complaint also alleges that rule 33, before said attempted amendment thereof, simply provided for the hearing of charges against the members of the common council as such, (and not as president thereof,) and that such rules, as well as section 7 of the charter, required a two-thirds vote of all the members elected to the common council in order to expel a member, but that the present amended rules purport to authorize the making of charges against the president of the common council as such, as to which it is claimed that a majority vote of the members of the common council is sufficient to justify the expulsion of the president from the presidency of the said common council. The complaint also alleges that at the same meeting charges were preferred by an alderman against the plaintiff, as alderman at large and as president of the common council, and such proceedings were taken under such charges preferred against this plaintiff; that a copy of the notice of hearing, a copy of the resolution of the common council, together with a copy of the charges against the plaintiff, were served upon him. The complaint also alleges that at the time fixed in said notice of hearing the

plaintiff appeared specially before the committee of the common council named in said resolution, for the sole purpose of making certain objections to such proceedings and to the right of the committee to entertain the same, and made such objection.   The complaint also alleges that certain documents and records were offered in evidence before said committee, in support of the charges, and certain oral evidence was taken in support thereof, and charges that the plaintiff was deprived of the privilege of a full and complete cross-examination of the witnesses offered and who gave oral testimony.   The complainant denies the authority of the common council to delegate this power to a committee of investigation, and alleges that the common council, in its rules, provided for a secret session for the consideration of the report of the committee; thus excluding and preventing the plaintiff from appearing before said committee and common council by counsel.   The complaint also alleges and charges that the president of the common council is by the law and the rules of the common council ex officio a member of the board of finance, the board of contract and apportionment of the city, and was invested with several powers and rights devolved by the charter of the city of Albany upon said president, and has since enjoyed and been entitled to said rights and powers and to certain rights of succession to the mayoralty of said city, and is a member of the board of election commissioners, which has the power to appoint inspectors of election, poll clerks, and ballot clerks to act at the election for public officers, which may be held pursuant to law in the city of Albany; that the other members of the board of election commissioners at the time specified in the complaint were James H. Manning, mayor of the city of Albany, and Clifford D. Gregory, a member of the republican members, representing the political minority of the common council.   The complaint also alleges a disagreement between the plaintiff and the mayor in the selection of inspectors, poll clerks, and ballot clerks, and charges, among other things, that the object of the preferred charges against him, and his removal from the position as president of the board, is to deprive him of the power of acting as such election commissioner.

Upon this complaint, the substance of which we have recited, the plaintiff asks a perpetual injunction, and upon the complaint and affidavits in support thereof obtained an injunction and order to show cause, which injunction is sought to be continued pendente lite by this motion.   Affidavits have been presented on this motion in support of and in opposition thereto, involving to some extent the merits of the action and the rights of the plaintiff to the ultimate relief sought; but in the consideration of this motion we are not called upon to pass upon the merits of the controversy.   The principal legal questions which seem to be presented for our consideration are:  First. Whether the common council in this case, under the charter and rules adopted by it, had the power, in the manner indicated by the proceedings in this case, to change its rules, and pass a valid resolution to investigate the action of the plaintiff, as president of the common council, with a view or purpose to de-

pose him from his position as president, or removing him as alderman from the board of the common council, without first giving notice of an application to change the by-laws,·and without a two-thirds vote of all the members elected to the common council. Second. Whether a party can properly invoke the extraordinary powers of a court of equity by way of injunction to restrain the action of a municipal body in dealing with its individual members.

It is quite apparent that the provisions of rule 34, prescribing the method in which the rules of the common council, which by statute they are authorized to make, were proposed to be amended in this case, have not been complied with. No notice of an application to change the rules was given at the previous meeting, as required by rule 34; and the rule which was adopted as an amendment of rule 33 by the common council was adopted only by a majority, and not by a two-thirds vote, as prescribed by rule 34. The amendment which was proposed to be incorporated in rule 33 by the action of the common council related exclusively to the president of the common council, of which this plaintiff was the incumbent, and incorporated in it a provision authorizing charges to be preferred against the president of the common council as such, and the appointment of a committee to investigate such charges by the common council, without extending to the person so charged the privilege of objecting to two members of the committee, as could be done by any other member of the common council not acting as president. This, it seems to us, was a clear violation of the rule which required a previous notice of the application, and which also required the adoption of an amendment to the rule by a two-thirds vote; and also a violation of the provisions of section 34 of chapter 298 of the Laws of 1883, which provides as follows:

"No ordinance shall be adopted, and no law, ordinance, or by-law shall be rescinded or repealed, unless by a two-thirds vote of all the members elected to the common council; nor shall any such adoption or repeal be valid unless notice of such intended action shall have been given at the previous regular meeting of the common council."

It is true that the decision of the president of the board that the amendment had not been adopted for the want of a two-thirds vote, as required by rule 34, was, on appeal, overruled by a majority vote of the members of the common council, but it can hardly be successfully maintained, we think, that by overruling the decision of the chair the vote so overruling the president can be held to have legally adopted by a majority vote an amendment to the rules requiring a two-thirds vote for its adoption. It would seem to follow, therefore, that the attempted amendment of the rules failed for the want of the requisite vote; and the original rules, under which the common council had been acting, remain in force, unaltered and unaffected by the proposed amendment.

But it is insisted by the learned counsel for the defendant that by the peculiar language of the resolution under which the existing rules of the common council were adopted, they remained in force only until a committee appointed to report upon rules should

make its report, and not until the report so made should be adopted by a vote in accordance with the provision of existing rules; but we cannot agree with the learned counsel in this interpretation.   Such a construction would practically nullify such existing rules, and operate as their repeal, without the concurrence of the requisite vote provided for in the rules and by statute for a change of the same, and put it in the power of a bare majority at any time to substitute the general parliamentary law in the place of the prescribed rules, without the adoption of any substitute or amendment to the same.   I am therefore clearly of the opinion that rule 33, as it existed before the proposed amendment, was still in force at the time the charges against the president were preferred and the committee appointed by the common council was created to investigate such charges, and that, as such committee was not appointed in pursuance of the provisions of rule 33, and the plaintiff did not have the opportunity accorded by that rule to object to two of its members, the appointment of the committee was not only in violation of the rules, but in violation of the rights of the plaintiff, when tested by that rule; and this brings us to the consideration of the question "whether the powers of the court of equity can be invoked to restrain the common council from acting upon the charges made against the plaintiff, with a view and for the purpose of determining whether he should be removed from his position as president of the common council, or expelled from that body as a member thereof."   For the purpose of this motion, without attempting to dispose of the ultimate subject of controversy between the parties, I think it may be fairly held that the plaintiff demands and is prima facie entitled to judgment against the defendants restraining the act sought to be accomplished,—of removal from the office or position of president of the board of common council,—and which act during the pendency of the action would prejudice the plaintiff; and we think it sufficiently appears by the complaint and affidavit that the defendants, or some of them, are doing or procuring or suffering to be done or threatening or about to do an act in violation of the plaintiff's right, respecting the subject of the action, and tending to render the judgment ineffectual.   If this be so, then the case is brought within the purview of sections 603 and 604 of the Code of Civil Procedure.   Cushing v. Ruslander, 49 Hun, 19, 1 N. Y. Supp. 505.

It may be conceded, as it is doubtless true, that the common council of a municipality is invested with certain legislative authority and quasi judicial power, and in its attempts to exercise such legislative and judicial jurisdiction, so long as it keeps within the limits of the power and authority conferred upon it by law, courts cannot interfere with or control the manner in which it exercises its judicial and legislative functions; but that rule does not go to the extent of authorizing the common council of a municipality to violate or disregard express provisions of law, or without authority to interfere with or divest vested rights pertaining to a municipal officer or an individual.   The common council, being

a creature of the statute, and invested with none of the attributes of sovereignty, except such as are conferred by law, cannot transcend the limits of its delegated authority without subjecting itself in a proper case to the restraining power of the court. As was said by the learned judge in Negus v. City of Brooklyn, 10 Abb. N. C. 182:

"It is too late to deny the power of the court to prevent the commission of illegal acts by members of the common council. They are mere agents, with defined and limited power. While the court cannot rightfully control the proper exercise of the discretion invested in them, yet when they threaten an abuse or illegal exercise of such discretion, and especially when they claim the right to exercise power which they do not possess, it is the duty of the court to interpose its authority."

It is true that this language was used by a judge at special term, but the doctrine there laid down was substantially maintained in a subsequent proceeding to punish for contempt for the disobedience of an order of the special term on a review of the question in the court of appeals in People v. Dwyer, 90 N. Y. 402. And Finch, J., in delivering the opinion of the court, uses this language:

"That public bodies and public officers may be restrained by injunction for proceeding in violation of law to the prejudice of the public or to the injury of individual rights, cannot be questioned;" citing People v. Canal Board, 55 N. Y. 393; Davis v. Society, 75 N. Y. 369.

And the learned judge adds:

"Whether the act sought to be enjoined was, or was not, of a legislative character, was a judicial question to be disposed of by the court acting upon the facts, and it could prohibit action until it could investigate and finally decide the question;" citing People v. Sturtevant, 9 N. Y. 274.

We have been referred by the learned counsel for the defendants, in his very able and exhaustive review and examination of the equity powers of this court, to a number of the decisions of the courts and dicta of elementary writers establishing a proposition which cannot now be denied, that the court of equity will not interfere by ultimate injunction to restrain the commission of an act where the party invoking its aid has an adequate and complete remedy at law, and, if this case comes within the range of those authorities, the relief sought in the complaint of a perpetual injunction will ultimately be denied; but authorities to which the learned counsel refers relate principally to the final relief by injunction, and not to the propriety of authority of the court to grant an injunction pendente lite to restrain a party from the performance of an act which, if performed pending the action, would render the judgment, if finally pronounced in favor of the plaintiff, ineffectual.

It is insisted by the learned counsel for the defendants that the plaintiff, if his rights are improperly interfered with by the action of the common council, or a majority of them, might be fully protected and vindicated in an action at law; and that, if the common council erred in removing him from the office of president of the common council, he could obtain full and adequate relief by certiorari, under the provisions of section 2140 of the Code of Civil Procedure; but while it is true that in such proceeding,

if the common council acted· illegally or without authority, their action might be reviewed and reversed upon certiorari, it is equally certain that such reversal would not furnish the plaintiff with a full and adequate remedy for his illegal or improper expulsion from his office as president of the common council. There would be an interregnum or interval between the time of his expulsion and the time of the determination by the court on certiorari during which he would be divested of his office, and deprived of his enjoyment of the franchise and privileges which it confers, for which the court, on certiorari, could furnish him no adequate compensation or redress. If it be answered that the common council is, by the charter, made the judge of the qualifications and election of its members, and invested with the power and authority to punish a member of the board of aldermen for improper conduct, neglect of duty, or violation of his obligations as such, and in certain cases by expulsion from the body, still it must be conceded that the exercise of that authority must be within the provisions of law, and in obedience to law and rules by which the common council are to be governed, and under which they are authorized to act; and where they threaten to act without authority of law, in violation of the rights of the plaintiff, and to do an act which, during the pendency of the litigation, may, as we have seen, render the judgment ineffectual, the court may restrain such action until it shall be finally determined whether or not the plaintiff is entitled to the relief which he demands. Code Civil Proc. § 603.

No express power seems to have been conferred, either by statute or by the rules of the common council as they existed at the time of the report of the committee on rules, for removing from his office the president of the common council as such. It is true that the statute and the rules provided for the removal of an alderman, and the president of the board of common council, being an alderman, would be subject to removal from the board of aldermen in the manner prescribed by the statute and by the rules for such removal, and when removed as an alderman the office of president of the board, which he held, would necessarily fall; but the absence of any authority, either in the rules or in the statute, for the removal of the president from his position as such, would not, we think, justify a majority of the board of aldermen arbitrarily and without authority of the rules or of law to remove him from such position, and before such removal could be made it would seem to be necessary that the rules of the common council should be so amended and modified as to authorize such removal; and, as we have seen, such amendment of the rules could not be made except in the manner prescribed by section 7 of chapter 298 of the Laws of 1883, and rule 34, under which the common council was operating, and his attempted removal without such amendment of the rules might be such a violation of his rights and such a threatened deprivation of the franchises and privileges of his office as to authorize the court to prevent its accomplishment by injunction; and, while that question is in process of litigation, to be tried in a court of

competent jurisdiction, it seems that a court of equity may temporarily restrain the defendants from the accomplishment of the act which, if accomplished during the pendency of the suit, would deprive the plaintiff of the benefits of his judgment. In Palmer v. Foley, 45 How. Pr. 110–118, where an injunction had been granted pendente lite "to restrain the removal of deputy chamberlain from interfering with the office of chamberlain, the general term of the superior court of the city of New York, in discussing the office of a temporary injunction, uses this language:

"The object of the process of injunction is both preventive and protective. It seeks to prevent a meditated wrong, and not to redress an injury, which can usually be done only at law, and then to protect the party against any unlawful invasion of his rights."

In Tyack v. Bromley, 4 Edw. Ch. 258–270, the vice chancellor, in sustaining a temporary injunction, uses this language:

"Courts of justice are bound to aid a party in possession of rights, whether they be natural or artificial, or such as are mere creations of law, whenever those rights have been infringed, or their destruction may be threatened. It has become a familiar principle of equity jurisdiction to protect by injunction statutory rights and privileges which are threatened to be destroyed or rendered valueless to the party by unauthorized interference of others; and although it was not proper for equity to restrain in the first instance where there was doubt, yet it would do so without requiring the establishing of the right at law where a clear case of common-law right was presented, and the party is in possession and enjoyment of the right which is threatened to be destroyed or rendered valueless."

—And the court in that case sustained a temporary injunction.

In the discussion of this question, and the examination which we have been able to give it, we have, as before intimated, endeavored to avoid any determination of the ultimate rights of these parties, which must be met and determined upon the issue of law, which has already been tendered by the demurrer, or upon any issue of fact which may hereafter be joined in the case. We have only examined the merits so far as to enable us to determine whether the rights of the plaintiff would be jeopardized pending the prosecution of this action if this temporary or interlocutory injunction were vacated, and whether those of the defendant could be seriously impaired by the continuation of this injunction until the final trial of this suit; and in that light, and upon such examination, we have reached the conclusion that the rights of the parties will be best subserved by allowing this injunction to stand pendente lite, in doing which we think we are sustained both upon principle and authority.

In discussing the right and power of the court to grant a preliminary injunction pendente lite, the author of High on Injunctions (volume 1, 2d Ed., p. 5, § 5) uses this language:

"It is constantly to be borne in mind that in granting temporary relief by interlocutory injunction courts of equity in no manner anticipate the ultimate determination of the questions of right involved. They merely recognize that a sufficient case has been made out to warrant the preservation of the party or rights in issue in statu quo until a hearing upon the merits, without expressing, and, indeed, without having the means of forming, an opinion as to such rights; and in order to sustain an injunction for the protection of prop-

erty pendente lite it is not necessary to decide in favor of the complainant upon the merits; nor is it necessary that he should present such a case as will certainly entitle him to a decree upon the final hearing, since he may be entitled to an interlocutory injunction although his rights to the relief prayed may ultimately fail; nor is the decision of the court in granting or refusing a preliminary injunction conclusive upon either the court or parties on the subsequent disposition of the case on final decree."

Acting upon this principle and in harmony with this doctrine, Barrett, J., in Cornwall v. Sachs, (Sup.) 23 N. Y. Supp. 500, in discussing the propriety of continuing a preliminary injunction during the pendency of the action, uses this language:

"The plaintiff thus makes out a prima facie case in support of his claim, and, although his averments are denied, we agree with the special term that it was proper to preserve the status quo until a hearing upon the merits. The injury which the plaintiff would sustain by a sale of the invention is much greater than the defendant can possibly sustain by a temporary restraint upon his right of disposition. The case is thus brought within the rule that where, upon balancing considerations of relative convenience and inconvenience, it is apparent that the act complained of is likely to result in irreparable injury to the complainant, and the balance of inconvenience preponderates in his favor, the injunction will be granted." Andrae v. Redfield, 12 Blatchf. 407.

We therefore reach the conclusion that the temporary injunction must be continued during the pendency of this action. Let an order be entered accordingly.