JACOB A. PRICE, Respondent, *v.* THOMAS ADAMSON, Appellant.

1. *Constitution—Officers—Revenue.*—The sheriff is, by virtue of his office as sheriff, collector of the State and county taxes; the two offices are one and inseparable. The ordinance of the Convention, passed March 17, 1865, vacating the offices of sheriffs, &c., on May 1, 1865, deprived the sheriffs of all authority as collectors of the revenue. The offices were vacated altogether.

2. *Practice—Appeal—Records.*—An appeal may be taken from the judgment of the Circuit Court rendered upon a citation issued by virtue of R. C. 1855, p. 1311, § 8, the same being a final judgment in a civil case.

*Appeal from Lafayette Circuit Court.*

*De Motte,* for appellant.

I. The judgment of the court is in contravention of a public statute, and is void.

1. To sustain the proposition that the judgment is contrary to law, reference is made to the ordinance of the Constitutional Convention of this State, commonly known as the vacating ordinance, passed March 17, 1865. By this ordinance the office of sheriff of Lafayette county was vacated on the 1st day of May, 1865. Sec. 1, p. 1310, R. C. 1855, provides that all officers at the expiration of their term of office, or when their offices are vacated, shall turn over all books and papers, &c., to their successors. Sec. 1, Art. 3, p. 76, Acts 1864, provides that the sheriff shall be collector from the first day of the month next succeeding his election as sheriff. Price was elected in November, 1864; consequently no other person could be collector for 1865 while he remained sheriff. In other words, no person but the then sheriff could be by law the collector for 1865. It is plain, then, from the provisions cited, and from the whole tenor and effect of the revenue laws of the State, that the sheriff's and collector's office is one and the same, and that when the office of sheriff is declared vacated, the office of collector is declared vacated. It would be doing violence to the plain intent and meaning and legal effect of the vacating ordinance to say that it only incapacitated an officer to perform one-half of his official duties, when it declared his office vacated.

2. The facts found by the court could not warrant the judgment of the court below. These facts, though true, (and appellant does not dispute them,) do not warrant the court in pronouncing judgment that the respondent was entitled to exercise a part of the functions of his office four months after his office had been declared vacant by competent authority.

II. The facts found by the court do not sustain the judgment.

Price v. Adamson.

1. The judgment of the court below is a final decision or judgment " in a civil cause." (R. C. 1855, § 9, p. 1287.)

2. This cause is now in this court in accordance with provisions 13 & 19, p. 1288, R. C. 1855. If the sections referred to are not designed to allow erroneous judgments to be appealed and passed upon by this court when the necessary steps have not been taken in term time in the court below, they are seemingly without meaning.

3. The case of Howard v. The State only decides that a collector cannot, by resigning, relieve himself and his securities from liability on his bond. It does not decide that the people in convention assembled cannot declare an office vacated. The statute under which this decision was made is materially different from that of the present.

*Ryland* and *Green,* for respondent.

I. The proceeding is not a suit and was not embraced in the general statutory provisions authorizing appeals to this court, and no provision is made by the statute under which the proceedings were had providing for an appeal, nor is the judge before whom such a citation is heard required to preserve any record of the proceedings, which may be heard at chambers. (R. C. 1855, p. 1311, §§ 8 & 9.)

II. The evidence in the case is not before this court by bill of exceptions, and there is nothing in the record showing that the appellant Thomas Adamson was at the time sheriff of Lafayette county, or that he had ever been appointed or qualified as sheriff or collector for said county, or had any right whatever to the tax book for the year 1865.

III. To entitle the party to the benefit of objections to any of the rulings and findings of the court below, it should appear upon the record that the same objections were made in that court. (St. bt. Thames v. Erskine, 7 Mo. 213; Long v. Story, 13 Mo. 4; Mehl v. Waldorf, 35 Mo. 466.)

IV. Where a verdict is rendered and no motion is made to set it aside, the court will affirm the judgment of the court below. (Higgins v. Breen, 9 Mo. 493; Watson v. Pierce,

11 Mo. 358; Fugate et al. v. Muir, 9 Mo. 351; Richard v. White, 11 Mo. 623.)

· V. There is no error in the judgment of the Circuit Court. The collector of the revenue for any given year is an entirety, and the collector having received and receipted for the tax book, and entered upon the collection before going out of office, can only release himself and securities by collecting and paying over the taxes for that year. (Howard v. The State, 8 Mo. 361.)

HOLMES, Judge, delivered the opinion of the court.

This proceeding arose under the act concerning the recovery of public records, (R. C. 1855, p. 1310,) the first section of which provides that if any civil officer, having any record, books, or papers, appertaining to any public office, shall resign, or his office be vacated, he shall deliver to his successor all such records and papers. It appears that the respondent Price was elected sheriff of the county of Lafayette, in November, 1864, and was duly qualified, and entered upon the duties of his office, both as sheriff and *ex officio* collector, and that on the 25th day of April, 1865, he received and receipted for the tax books of Lafayette county for the year 1865, as such collector. On the 17th day of March, 1865, the people of the State of Missouri, in Convention assembled, by an ordinance of that date, had vacated certain civil offices, among which were those of all the sheriffs in the State, and ordained that the same should be filled for the remainder of their respective terms by appointment of the Governor.

It appears by the record that on the 7th day of August, 1865, the respondent Price made application to the Circuit Court of Lafayette county for a citation to be issued against Thomas Adamson, sheriff of the county, the appellant here, upon an affidavit, which stated the fact of the election and qualification of the respondent as sheriff and *ex officio* collector of said county, and that he entered upon the duties of the office, and received the fees and emoluments thereof, and the possession of the books and papers appertaining thereto,

until the expiration of his said term of two years; that since the adoption and going into effect of the new Constitution of the State, he had subscribed, sworn to, and filed with the county clerk, the oath prescribed by the Constitution. The affidavit further stated that one Thomas Adamson procured the issuing of a warrant by one of the judges of the Supreme Court, under the statute in such case made and provided, to take from the custody and possession of the affiant the books and papers belonging to his said office of sheriff, and to procure them to be delivered to the said Thomas Adamson; by the execution of which said warrant, great damages and injury would be done and accrue to the affiant, by depriving him of the books and papers pertaining to said office; wherefore he prayed for a citation to be issued, requiring said Thomas Adamson to appear before the court on a day to be named, that his right in the premises might be determined. And afterwards, on the 23d day of August, the said Price appeared and waived all matters in his said affidavit, except as to his right to the tax book of 1865, and the said Adamson came and waived the issuing of a citation, and asked the court to decide whether he or the said Price was entitled to the tax books of said county for the year 1865.

It further appears that, " the court, after hearing the allegations and proofs, finds the facts as follows: That said Price was, at the time of receiving said tax books, on the 25th day of April, 1865, the legal collector of Lafayette county, Mo., and as such receipted for the tax books of 1865, as before stated, and thereby bound himself and his securities for the same. It is therefore adjudged by the court that the said Price is entitled to the custody and collection of the same, and that he and his securities are alone responsible for it."

From this judgment Adamson takes an appeal to this court. There was no motion for a new trial or an arrest of judgment, and the only questions that can be noticed, are those arising upon the face of the record, being such only as are raised by an appeal or writ of error. The proceeding was had under the eighth section of the act concerning public records, which

provides that any person aggrieved by any such warrant (as that provided for in the fifth section, commanding the seizure of all records, books, and papers, appertaining to any public office, and the delivery of them to the proper officer, to be named in such warrant,) may apply to any judge of the Supreme or Circuit Court, who, upon affidavit of the applicant that injustice has been done by such warrant, shall issue a citation to all persons interested, commanding them to appear before him at a place and time named in the citation. And by the sixth section of the act it is further provided that the judge shall proceed in a summary manner, and determine [the proceeding] according to right and justice. This act makes no provision for an appeal in such case. It seems to contemplate a proceeding before a judge at chambers, or in vacation, and not before a court. However this may be, the Circuit Court took jurisdiction of this case, and proceeded to pronounce judgment, finally concluding the rights of the parties in the premises. The 9th section of the "Act concerning practice in civil cases" provides that any person aggrieved by any final judgment of any Circuit Court of any civil case, may make his appeal to the Supreme Court, (R. C. 1855, p. 1287,) and this appeal was taken under the same act, (§§ 13, 14, & 19,) and there can be no doubt that this was a final judgment, a decision of a Circuit Court in a civil case, from which an appeal will lie.

The court below, as well as this court, is bound to take judicial notice of the Constitution, ordinances, and statutes of the State; and the facts appearing by this record to have been brought before the court upon this application, showed that the only right or title which the respondent claimed to the office of sheriff and *ex officio* collector of the county of Lafayette, was that arising by virtue of his election to that office in November, 1864. The question of law was thus presented whether the ordinance had the effect to vacate said office. This ordinance expressly declared the offices of all sheriffs in the State vacated on the first day of May, 1865. This is too clear to admit of any doubt or question. The

Price v. Adamson.

statute then in force provided that every sheriff hereafter elected, (except the sheriff of St. Louis county,) shall be, *ex officio*, collector of the revenue, within the county, for two years, commencing on the first day of the month next ensuing his election. (Laws of 1863–4, p. 76.) It was, therefore, only by virtue of being sheriff of the county that the respondent could be also collector. In respect to the person who is to be such officer, the two offices are one and inseparable; and when he ceased to be sheriff, he also ceased to be the official collector of the county. Both offices, so far as they may be in any respect several, were necessarily vacated together when the official character of the person who held them was absolutely terminated by the ordinance, without a saving clause. His official term thereby came to an end as completely as if his term of office had expired by limitation, or as if the incumbent had departed this life. He no longer had any power to execute the functions and perform the duties of the office, either as sheriff or collector. The ordinance was the supreme law.

The provisions of the sixth article of the Revenue Act of 1855, (§§ 1 & 5,) were still in force, unrepealed by the act of 1864, and unaffected by the ordinance; and by these sections it is expressly provided that at the expiration of the term for which the several collectors were elected, (as soon thereafter as their successors shall have qualified,) they shall pay over all moneys which may be in their hands due the State, to their successors in office, and take duplicate receipts therefor; and whenever any collector shall die after he has received the tax book for any year, his legal representatives shall hand over at once to his successor, as soon as he is appointed and qualified, the tax book, and shall also pay over at once, out of his estate, all moneys which have been collected by the deceased collector, and then in his hands. There is, of course, no express provision for the particular case of an absolute termination of the office by a fundamental ordinance, changing the constitution of government itself; but the general purview and the manifest spirit and intent

of these provisions would seem to contemplate that the same thing should take place in case of such absolute civil death of his office as if it had been occasioned by his natural death. If these laws had contemplated any other person than the *ex officio* collector, that is, the collector, who was at the same time the sheriff and therefore collector also, might perform the functions of the office after he had ceased to be such officer, or that it was a personal duty merely, and not exclusively an official function, there would have been no reason why, upon his decease, his administrator or legal representative should not have been left to fulfil those duties, and complete his unfinished business during the remainder of his term of office ; and in such case there would have been no need of a successor until the time came for a new election. It is plain the statute did not view the matter in this light. It is made imperative on the legal representative, in such case, into whose hands the tax book and the public moneys might happen to fall upon the event of his decease, to deliver them over immediately to his successor, when duly appointed, and the whole unfinished business is to be completed by him.

The first section of the sixth article (R. C. 1855, p. 1362) also appears to contemplate that the power and official functions of the collector may cease with the expiration of his term of office, for it requires him to pay over to his successor all moneys in his hands belonging to the State, whose receipts are to be his discharge. Books and papers are not specially named. It may have been considered enough, so far as the interests of the State were concerned, that he should be expressly required to account for the money to his successor, rather than directly to the State Auditor and in case he retained the tax book, and continued to make collections, by virtue of his official character, it may very well be that both he and his securities would be held liable to account to the State on his official bond for all the acts he should undertake to do, and for all moneys for which he might become accountable while so acting as collector by color of office. The

question of his liability to account to the State is one thing; that of his right and power to retain the books of his office against his successor demanding to receive them, under the operation of existing statutes and the vacating ordinance, which is the supreme command of the State itself, is quite another thing. It cannot be denied that the effect of this ordinance was much more nearly analogous to the case of his death than to that of a voluntary resignation, the expiration of his term of office, or its termination by any disqualification or incapacity; for, by the direct force of a paramount enactment of the highest authority in the State, the office was totally vacated and annulled in his person.

This construction of the ordinance and the statute concerning collectors is in harmony with the clear and express provisions of the "Act concerning public records," which declares that when any civil officer shall resign or his office be vacated, he shall deliver to his successor all records, books, and papers to such public office; and it requires any judge of the Supreme or Circuit Court, in case of his failure to do so, upon the affidavit of a credible person setting forth the facts, to issue his warrant to the sheriff or coroner, commanding him to seize all such records, books, and papers, and deliver them over at once to the proper officer. In this case the proper officer was the duly appointed sheriff of the county and *ex officio* collector. How can any judge refuse to issue the warrant when it is made to appear in this manner that a case has arisen, and that, in the very words of the act, the office in question has "become vacated," and that a successor, duly appointed, is demanding the records and books of the office to enable him to proceed with his official duties? This act might be supposed to have reference more especially to such offices as clerks and recorders, or the higher offices of the State; but there is nothing in the language or purview of the act to limit its application to civil officers of any particular description, or to the records, books, and papers, of any peculiar kind of public office. The policy of the act as well as the words would seem to contemplate all civil offi-

cers and all public offices.   If the officer had vacated the office by his own act, and abandoned the custody of the records, books, and papers, and they had fallen into the hands of a stranger or mere intruder, there would be little room for doubt on the subject; and when they are retained by a person whose official character has come to an end, it is difficult to see on what ground he is to be distinguished from a mere stranger or lawless intruder.

In some cases a sheriff may complete an act begun and substantially executed while in office, by going through with merely formal proceedings after his office expires; as, where he has levied upon goods and his office expires before a sale, he may complete the levy by making sale and bringing the money into court; " for," says Holt, C. J., in Clerk v. Withers, (2 Ld. Raym. 1072,) " because after the seizure of the goods, there is nothing to be done by the sheriff but to bring the money into court, though, indeed, if the sheriff pay the money to the plaintiff, that is well." But if any substantial act remained to be done, as, if a levy had not been made, or if, (as in that case,) an extent had been made, which still required an award of *liberate* to make it valid and effectual, and the office of the sheriff expires or the plaintiff dies before that is done, he cannot do it afterwards.   In short, he cannot do any further new and substantial act as such officer.   His powers as sheriff are at an end, and so it must be also with the *ex officio* collector.   If he has made a levy of a tax, he may sell and pay the money over to his successor; if he has not, he can do nothing further in the matter but deliver over his books and papers, and his unexecuted business, to his successor in office.   This case of Clerk v. Withers is cited by Napton, J., in Howard v. The State, (8 Mo. 361,) as authority for the doctrine then held, and it is enough to show that the court did not intend to go any further than this in their statement of the common law.

The case of Howard v. State is urged as an authoritative decision on the points involved in the present case.   In that case a sheriff and *ex officio* collector had resigned after hav-

ing received the tax book of the year, and after having given bond and security in accordance with the statute then in force, (R. C. 1835, p. 528,) and he had turned over the tax book to the succeeding sheriff. Under the statutes then existing he and his securities were held liable to account to the State for the collection of the revenue of that year. These statute provisions were materially different from those of the present revenue acts. They contained nothing like the above cited sections of article sixth of the revenue act of 1855. Under the act of 1835, the court held that the offices of sheriff and collector were only so far inseparable that "before a person can be collector he must fill the office of sheriff;" but that "the sheriff was not always collector, nor was the collector necessarily sheriff;" and that "from the first Monday in August until the first of January succeeding, the sheriff and collector are two different persons;" and further that "the sheriff cannot (by the law as it was in 1835, under which this case was determined) assume the duties of collector until after the first of January, and he continues in office as collector five months after the expiration of his office as sheriff." And it was held that under the act of 1835, when the sheriff had entered upon the duties of collector, and receipted for the tax books to the Auditor, that account was *prima facie* evidence against him, and could only be discharged by his paying the amount due into the treasury. At the same time the court did not doubt that he might resign his office, and by his resignation of the office of sheriff, where he filled both offices, relieve himself of the duties of collector ; but that this privilege must be so exercised as not to prejudice the rights of the public or his liability to the State. As the law then stood, there was no provision by which the bond required of the succeeding sheriff would cover the tax book of that year, and the decision goes upon the ground that by the existing statute the collector was to complete the collection for the year, and that he alone would be accountable to the State for the performance of that duty. This is the whole purport of that case.

By the act of 1864, the sheriff was to be *ex officio* collector for two years from the first day of the month next ensuing his election, and he was to give bond for the faithful performance of his duties for the two years next ensuing the first day of December thereafter; and if no ordinance had intervened there might have been some room for the opinion that he was by the statute bound to perform the duties of collector for that whole period of two years, and that he and his sureties on the bond so given might be held liable for the faithful and complete performance of the obligations so entered into with the State, and impliedly, that his powers as such collector were to continue for that purpose. But here the State herself intervenes, and by an absolute ordinance, which over-rides and repeals all inconsistent statutes, puts an end to all such powers and duties of all sheriffs and *ex officio* collectors throughout the State, as completely as the natural death of the persons holding those offices could have done. The provisions of the statutes which are applicable to such case, and are not inconsistent with the operation of the ordinance, still remain in force, and they furnish the proper rule and guide for the determination of a case of this kind. According to the general principles of the common law, as laid down in Clerk v. Withers, applicable to sheriffs, they might still complete the formal parts of acts already substantially done, but they had no power to begin any new official acts. It may very well be true that the collector and his securities may be liable on his bond for all acts so done, and even for all acts subsequently done, under color of office; but of this matter we are not now called upon to decide. Nor can there be any doubt that the new sheriff and *ex officio* collector, who has been duly appointed under the ordinance and given the bond required by law to cover the period of his official duty, would be accountable on his bond for the tax book and all unfinished business of the office which should come into his hands or be turned over to him by his predecessor in office. The present statutes make ample provision on this subject.

We have therefore come to the conclusion that the judg-

ment of the court below upon the facts laid before it was erroneous as a matter of law ; and we are better satisfied to rest upon this conclusion, as it is probable that nearly all of the old collectors have complied with the ordinance and the laws as we have here interpreted them, and actually turned over the tax books of the year and all unexecuted official business to their several successors in office, whereby they and their securities have become liable to account to the State, and the old collectors have been discharged from any legal and just accountability further.

The other judges concurring, the judgment is reversed.