THE PEOPLE OF THE STATE OF NEW YORK ex rel. JOHN E.
    CORSCADDEN, Respondent, v. JOHN A. HOWE, JR., as County
    Treasurer of the County of Albany, Appellant.

JOHN E. CORSCADDEN, Respondent and Appellant, v. ISAAC M.
    HASWELL et al., Constituting the Albany Penitentiary Com-
    mission, et al., Appellants and Respondents.

1. CONSTITUTIONAL LAW — LOCAL BILL EMBRACING SUBJECTS NOT
SUFFICIENTLY EXPRESSED IN TITLE, VOID — CONST. ART. 3, § 16.    A stat-
ute entitled "An act to amend chapter two hundred and sixty-one of the
laws of eighteen hundred and eighty-five, entitled 'An act in relation to the
management of the Albany Penitentiary,' relative to the salary of the
keeper of said penitentiary," which, while purporting to amend in only
one particular, viz., the salary of the keeper of the penitentiary, also
authorizes the commissioners of the penitentiary to discharge the keeper
and turn the penitentiary over to the sheriff, not only does not sufficiently
express the subject thereof in its title, but the title tends to avert atten-
tion from the subject ; so far, therefore, as it relates to the power of the
commissioners to discharge the keeper and turn the penitentiary over to
the sheriff it violates section 16 of article 3 of the Constitution, providing
that private and local bills shall not embrace more than one subject, and
is void.
2. EQUITY HAS NO JURISDICTION OVER CONTESTS TO PUBLIC OFFICE.
A court of equity will not entertain jurisdiction over contests to public
office; and, therefore, an action brought by the incumbent of the office of
keeper of the penitentiary at the time of the passage of the act, to procure
an injunction restraining the commissioners from removing him from
office and from transferring the penitentiary to the sheriff, cannot be suc-
cessfully maintained, notwithstanding the invalidity of the act; since the
determination of the title to public office belongs exclusively to the courts
of law to be exercised by mandamus, prohibition and quo warranto, as the
circumstances of the case and the mode of procedure may require.
    *People ex rel. Corscadden* v. *Howe*, 88 App. Div. 617, affirmed; *Corscadden*
v. *Haswell*, 88 App. Div. 158, reversed.

(Argued January 6, 1904; decided February 23, 1904.)

APPEAL, in first action, from an order of the Appellate
Division in the third judicial department, entered November
20, 1903, which affirmed an order of Special Term granting a
motion for a peremptory writ of mandamus to compel defend-
ant to pay to relator an amount claimed to be due him for

salary as superintendent of the Albany County Penitentiary and to accept from him certain moneys received by him in such capacity.

Cross-appeals, in second action, from a judgment of the Appellate Division of the Supreme Court in the third judicial department, entered December 15, 1903, which modified and affirmed as modified a judgment of Special Term granting an injunction restraining the defendants from removing the relator from the position of superintendent of the Albany County Penitentiary.

The facts, so far as material, are stated in the opinion.

*Edwin Countryman* for plaintiff, respondent and appellant. The act of 1902 is in violation of article 3, section 16, of the State Constitution. (*Sweet* v. *City of Syracuse*, 129 N. Y. 316; *Astor* v. *A. Ry. Co.*, 113 N. Y. 93; *People* v. *Hills*, 35 N. Y. 449; *People* v. *O'Brien*, 38 N. Y. 193; *Matter of Blodgett*, 89 N. Y. 392; *Gaskin* v. *Meek*, 42 N. Y. 186; *People* v. *Allen*, 42 N. Y. 404; *Matter of Sackett St.*, 74 N. Y. 95; *People ex rel.* v. *Common Council*, 13 Abb. Pr. [N. S.] 121; *People* v. *Bd. Suprs.*, 43 N. Y. 10.) The plaintiff had no adequate remedy at law against the defendants' acts and threatened course of procedure. (*People ex rel.* v. *Board of Health*, 140 N. Y. 1; *Flood* v. *Van Wormer*, 147 N. Y. 284; *Williams* v. *Boynton*, 147 N. Y. 426; *Rathbone* v. *Wirth*, 150 N. Y. 459, 499; *H. R. T. Co.* v. *Johnstown*, 37 Misc. Rep. 41; *Butler* v. *Village of White Plains*, 59 App. Div. 30; *Gunning System* v. *City of Buffalo*, 62 App. Div. 497; *Traction Co.* v. *Watervliet*, 35 Misc. Rep. 392; *Sammons* v. *City of Gloversville*, 34 Misc. Rep. 459; 67 App. Div. 628; 175 N. Y. 346; *Heiser* v. *Mayor, etc.*, 104 N. Y. 68.)

*J. Newton Fiero* and *J. S. Frost* for defendants, appellants and respondents. Plaintiff cannot maintain the action for an injunction, there being a complete and adequate remedy at law. (*People ex rel.* v. *Goetting*, 133 N. Y. 569; *People ex rel.* v. *Brush*, 146 N. Y. 60; *Matter of Hart*, 159 N. Y.

278; 161 N. Y. 507; *People* v. *Bd. of Assessors*, 39 N. Y. 81; *People ex rel.* v. *Coler*, 173 N. Y. 103; *McHenry* v. *Jewett*, 90 N. Y. 58.) This action cannot be maintained, for the reason that a court of equity has no jurisdiction over the subject-matter of the litigation, and has no power to grant the relief asked for and allowed by way of injunction against defendants. (Beach on Mod. Eq. Juris. § 670; High on Injunctions, § 1312; *Matter of Sawyer*, 124 U. S. 200; *Hark-rader* v. *Wadley*, 172 U. S. 148; *Fitts* v. *McGhee*, 172 U. S. 516; *Tappan* v. *Gray*, 9 Paige, 506; *People ex rel.* v. *Draper*, 24 Barb. 265; *Mott* v. *Connolly*, 50 Barb. 516; *People* v. *Mattier*, 2 Abb. Pr. [N. S.] 289; *Coulter* v. *Murray*, 15 Abb. Pr. [N. S.] 129; *Morris* v. *Whelan*, 11 Abb. [N. C.] 64; *Johnston* v. *Garside*, 65 Hun, 208.) The title of the act clearly expresses the subject thereof, and it is not unconstitutional by reason of failure to express the subject in the title. (*People ex rel.* v. *Whitlock*, 92 N. Y. 191; *People ex rel.* v. *Brinkerhoff*, 68 N. Y. 259; *Van Brunt* v. *Town of Flatbush*, 128 N. Y. 50; *Wilcox* v. *Baker*, 22 App. Div. 299; *People ex rel.* v. *Sutphin*, 166 N. Y. 163; *Sweet* v. *City of Syracuse*, 129 N. Y. 316; *People ex rel.* v. *Lawrence*, 41 N. Y. 137.)

CULLEN, J. By chapter 261 of the Laws of 1885 the management and care of the Albany penitentiary were vested in a board constituted by that act and known as the Albany penitentiary commission. By an amendment in 1895 (Chap. 761) it was enacted that said penitentiary commission (the constitution of which was changed by said amended act) should within fifteen days from June 10, 1895, and each five years thereafter, appoint for a period of five years a superintendent or principal keeper of said penitentiary at an annual salary of three thousand dollars. Under these statutory provisions John E. Corscadden, the relator in the mandamus proceeding, and plaintiff in the equity action, the subjects of these appeals, was, in November, 1900, appointed superintendent of the penitentiary for the term of five years. In 1902 a statute

(Chap. 127) was passed entitled " An act to amend chapter two hundred and sixty-one of the laws of eighteen hundred and eighty-five, entitled ' An act in relation to the management of the Albany Penitentiary,' relative to the salary of the keeper of said penitentiary." This statute amended section 4 of the original act of 1885 in several particulars. *First*, it provided that the salary of the superintendent should be fixed by the commission instead of being established at the rate of three thousand dollars a year. It also authorized the commissioners, whenever in their discretion it seemed to be for the best interests of the county of Albany, to dispense with the services of the superintendent and place the penitentiary in the custody and care of the sheriff, and if deemed advisable to close and discontinue the same and sell the lands and buildings. Assuming to act under the authority granted by the statute last mentioned, the commissioners (who with the sheriff are the defendants in the equity action) notified the relator that on March 1, 1903, they would place the penitentiary in the hands of the sheriff of Albany county and would remove the relator from his office as superintendent. Thereupon Mr. Corscadden brought an action to restrain the commissioners from removing him from his office and from transferring the penitentiary to the sheriff and obtained in such action a temporary injunction. The complaint in the action set forth the facts above recited and charged that the statute of 1902 was unconstitutional and void for several reasons stated ; that it impaired the obligation of the plaintiff's contract ; that it deprived him of property without due process of law and that it abridged his privileges and immunities as a citizen of the United States and a citizen of the state of New York ; and that it violated section 16 of article 3 of the Constitution of the state, which prescribes that " no private or local bill which may be passed by the legislature shall embrace more than one subject and that shall be expressed in the title." The complaint also alleged irreparable injury to the plaintiff's rights, and that the plaintiff was without adequate remedy of law. To this complaint the defendants, the peni-

tentiary commissioners, demurred on the grounds that it did not state facts sufficient to constitute a cause of action. Final judgment was awarded the plaintiff on demurrer and the defendants were enjoined from removing the plaintiff from his office or in any way interfering with him in the exercise of his duty. On appeal the Appellate Division modified the judgment by striking therefrom a provision restraining the defendants from fixing the plaintiff's salary, and as modified the judgment was affirmed. During the pendency of the litigation the county treasurer refused to pay the relator his salary as superintendent. After the decision of the Special Term in the injunction action Corscadden applied for a writ of peremptory mandamus to compel the payment of such salary. In his moving affidavit he stated at length the facts already given, the decision of the Special Term awarding him an injunction and that he had remained in possession of the office. In answer to the application the county treasurer disputed none of the facts stated by the relator, but averred that an appeal had been taken from the judgment. The Special Term awarded the writ as prayed for and on appeal the order was affirmed by the Appellate Division. In this court the two appeals, one from the judgment in the action and the other from the final order in the mandamus proceeding, have been argued together.

It will be convenient to dispose of the mandamus proceeding first, as the issue presented by that proceeding is very narrow and sharply defined. The relator has continued in possession of the office and the salary has not been paid to any other claimant. The relator being thus an officer *de facto* the appellant, the county treasurer, would have been protected in paying the salary to him. At the same time the relator could not compel such payment unless he established that he held the office *de jure* as well as *de facto*. (*Dolan* v. *Mayor, etc., of N. Y.*, 68 N. Y. 274.) Therefore, the sole question presented by the appeal in this proceeding is the validity of the provision of the act of 1902, which authorized the penitentiary commissioners to discharge the relator and turn the

penitentiary over to the sheriff. We agree with the learned court below that, so far as relates to that provision, the statute is in conflict with the constitutional mandate that a local or private bill shall not embrace more than one subject which shall be expressed in the title. The difficulty with the statute is not that it embraces more than one subject, but that that subject is not sufficiently expressed in the title. The whole matter of the regulation, custody and disposition of the penitentiary, the number and grades, the appointment, terms, tenure and salaries of its officers might properly constitute but a single statute. But the divisibility of subjects is very much akin to the divisibility of matter, and most subjects include things which may be treated as mere details of the greater subjects or as independent subjects in themselves. The object of the constitutional requirement was to " advise the public in general and members of the legislature in particular by the title of the bill what interests are likely to be affected by its becoming a law." (*People ex rel. Burroughs* v. *Brinkerhoff*, 68 N. Y. 259.) Therefore, it is very apparent that the title of a bill may be so limited as to exclude provisions which unquestionably could fairly be enacted in a single statute with a more comprehensive title. In the title of the statute before us it is stated that the purport of the act is not merely to amend " an act in relation to the management of the Albany penitentiary," but to amend it only in one particular and on one subject, the salary of the keeper of the penitentiary. To our minds such a title not only fails to advise the public and the legislature that any other details of the penitentiary management than the salary of the keeper are affected by the bill, but is substantially a proclamation to the contrary. We do not deem it profitable to review the many decisions of the courts on the effect of the constitutional inhibition under discussion. The general rule to be deduced from them is that it is not necessary that the title of the bill should be the best that could be selected, nor is it necessary to set forth in the title the various details of the object or purpose to be accomplished by the bill; it is sufficient if the title fairly expresses

1904.]   People ex rel. Corscadden v. Howe.   505

N. Y. Rep.]      Opinion of the Court, per Cullen, J.

the general purpose of the bill; but, at the same time, the title must be such as to reasonably apprise the public of the interests that are or may be affected by the statute. If there be any conflict in the decisions it is not as to these general rules, but as to their application to particular cases. In the present case we think that the title of the bill, instead of apprising the public that it was intended to bestow powers upon the commissioners to discontinue the penitentiary or turn it over to the sheriff, tended to avert attention from the subject. The order appealed from should, therefore, be affirmed, with costs.

Having determined that the attempted removal of Mr. Corscadden from his office of superintendent of the penitentiary was illegal, the only question which remains to be decided in the injunction action is whether such an action can be maintained. We are of opinion that it cannot. As early as the case of *Tuppan* v. *Gray* (9 Paige, 507) it was held by the chancellor that the Court of Chancery had no jurisdiction to enjoin at the suit of the incumbent of an office the intrusion of a hostile claimant illegally appointed to the office. This decision was unanimously affirmed by the Court of Errors (7 Hill, 259). In *Matter of Sawyer* (124 U. S. 200) the Supreme Court of the United States held that an injunction granted by the Circuit Court of the United States to restrain the mayor and common council of the city of Lincoln from removing a police judge was absolutely void, and discharged on habeas corpus the defendants who had been committed for violating the injunction. This decision proceeded as appears by an opinion of a majority of the court, not on the ground that a Federal court could not interfere with the appointment and removal of officers of a municipality created by the state, but on the broader ground that a court of equity had no jurisdiction to restrain the removal of a public officer, and the first authority cited to sustain that position was the decision of the courts of this state in *Tappan* v. *Gray*. The same principle was again declared in *White* v. *Berry* (171 U. S. 366) where it was held that a court of equity has no jurisdiction over the appointment and removal of public officers, and that the

determination of the title to public office belongs exclusively to the courts of law to be exercised by mandamus, prohibition and quo warranto · as the circumstances of the case and the mode of procedure may require.   The doctrine declared in *Tappan* v. *Gray* has been almost invariably followed in this state, there being only one reported case to the contrary.   In *People ex rel. Wood* v. *Draper* (24 Barb. 265), the famous Metropolitan police case, an application for an injunction restraining the defendants from assuming to act as police commissioners was denied on the ground that the court had ro power to grant such relief.   In *Mott* v. *Connolly* (50 Barb. 516), a similar application brought by the deputy tax commissioners of the city of New York against persons´ claiming to act as commissioners of taxes and assessments under a statute alleged to be invalid, ´was refused on the ground that the title to office could be determined only in an action at law.   To the same effect are *People* v. *Mattier* (2 Abb. [N. S.] 289); *Coulter* v. *Murray* (15 id. 129); *Morris* v. *Whelan* (11 Abb. [N. C.] 64), and *Johnston* v. *Garside* (65 Hun, 208).   The exception referred to is *Palmer* v. *Foley* (45 How. Pr. 110).   There an injunction obtained by the chamberlain of the city of New York against the defendant, who claimed to have been appointed deputy chamberlain by the comptroller of the city of New York in hostility to an appointee to the same office by the chamberlain, was upheld by the General Term of the Superior Court of New York, though by a divided court.   The majority while conceding that the title to the office of deputy chamberlain could not be tried in the suit, placed the decision on the theory that the invasion of the plaintiff's office by the defendant would be a trespass and that there was imposed on the plaintiff the duty of preserving and caring for the public books and records.   We are not impressed with the theory on which the Superior Court upheld the action.   If the theory is sound, it would seem to be equally applicable to the cases of all public officers and the result of the doctrine of the case would be that every official could retain his office until his successor had

succeeded in ousting him by a quo warranto. There are two cases that perhaps should be noticed though, in fact, they are not applicable to the point before us. *Mayor, etc.,* v. *Flagg* (6 Abb. Pr. 296) was brought by the city of New York against two rival claimants to the office of street commissioner and against the comptroller of the city to prevent the comptroller from paying official salaries to either of the claimants or their subordinates until the title to the office could be decided in quo warranto, and also restraining such claimants from suing for their salary. The Supreme Court at Special Term granted the injunction. The action was really in the nature of one of interpleader, though singular in its form and probably entirely unnecessary as payment to the *de facto* officer would have protected the city from the claim of the officer *de jure. Reis* v. *Rohde* (34 Hun, 161) was an action between a church and certain persons claiming to be trustees whom it was sought to enjoin from acting as such. The jurisdiction of the court to grant the injunction seems to have been upheld on the theory that the church itself had recognized the plaintiffs as trustees, and not the defendants.

Indeed, the principle that a court of equity will not entertain jurisdiction over contests to public office has been so fully recognized in this state that there seems to be no direct authority in this court on the question, though several instructive cases may be found. In *People* v. *Albany & Susquehanna Railroad Company* (57 N. Y. 161) it was said: "Elections to office, whether public or corporate, were never in England nor in this State up to the date of the Code, matters of equitable consideration. They depended only on legal inquiries and legal principles, and no instance can be found in which title to office has been dealt with by the courts on any other basis." A few cases in which this rule has been recognized rather than expressly decided may be referred to. In *People ex rel. Wren* v. *Goetting, Police Justice* (133 N. Y. 569) the relator sought a mandamus to compel the defendant to recognize him as clerk of the court, claiming that because he was a veteran his removal was illegal. A successor

had been appointed. The court below denied the application on the merits, holding that the defendant had power to remove the relator. This court affirmed the decision below, not on the merits, but on the ground that an incumbent being in the office the plaintiff's only remedy was by quo warranto. *People ex rel. Lewis* v. *Brush* (146 N. Y. 60) and many other decisions are to the same effect. In *Matter of Hart* (159 N. Y. 278) the relator applied for a mandamus to a canvassing board to compel the board to declare him elected a justice of the Supreme Court in the place of a deceased judge, a vacancy which the people had assumed to fill by choosing another person at an earlier election. The writ was refused, and the refusal was upheld by this court on the ground that the relator should be remitted to a quo warranto. It seems to me somewhat inconsistent to hold that a person removed from office, though illegally, must resort to a quo warranto against his successor, and yet to permit him to institute in advance an action in equity to restrain his successor from entering into possession or to oust him. It is alleged in the complaint that the injury to the plaintiff will be irreparable, and that he has no adequate remedy at law. But there is no fact stated in the complaint to support these allegations. Nothing appears to show that in any respect he would be worse off than any other public officer illegally or improperly removed. He has always had an ample remedy at law. If the office was filled by another person his remedy was by quo warranto. If it was not filled he could resort to mandamus. This was held in *People ex rel. Kelly* v. *Common Council of Brooklyn* (77 N. Y. 503). (See *State ex rel. McDermott* v. *Miller*, 45 N. J. Law, 251; Merrill on Mandamus, §§ 143, 148; 2 Dillon, § 847.)

The authorities on which the learned counsel for the respondent relies for the support of this action are not applicable. *Rathbone* v. *Wirth* (150 N. Y. 459) was a taxpayer's action brought under the statute. On a motion to continue a preliminary injunction the defendants challenged the right of the plaintiff to maintain the suit. The objection was overruled, but the learned judge who heard the application (now

the chief judge of this court) placed his decision solely on the ground of the Taxpayers' Statute (§ 1925, Code Civil Procedure), without which he states that the plaintiff would have no standing.   The defendants seem to have acquiesced in the propriety of this ruling, for the point does not appear to have been raised in the subsequent stages of the litigation.   The other cases cited are actions brought to restrain the illegal invasion by public officers of private property rights and have no bearing on the question before us, for it is the settled law of this state and of all the other states of the Union, with the exception, it is said, of North Carolina, that there is no property right in a public office.  (*Conner* v. *Mayor, etc., of N. Y.*, 5 N. Y. 285; *Butler* v. *Penn.*, 10 How. [U. S.] 402; Mechem on Public Officers, § 857; *People ex rel. Devery* v. *Coler*, 173 N. Y. 103.)

A full review of the decisions in the other states on the right of a court of equity to intervene in the contest for public office is found in *Matter of Sawyer* (*supra*), from which it appears that at least originally there was universal concurrence in the doctrine of the courts of this state.   Of late the Pennsylvania courts seem to have departed to some extent from the earlier decisions.   This course appears to have been dictated by a consideration of the embarrassment which might occur from a contest over a public office between rival claimants, each asserting that he was in possession thereof.   This consideration seems also to have largely influenced the court below in the decision of this case.   Whatever force there may be in it, we do not think it justifies an extension of equity jurisdiction on the subject.   If ever public convenience would have authorized the intervention of equity in a controversy beyond its cognizance, that controversy was the one passed on by this court in *People* v. *Albany & Susquehanna Railroad Company*, where "a war of injunctions" had caused in a part of the state no small degree of public disorder.   Yet, the court there held that no case of equitable cognizance was presented.   We appreciate the inconvenience and confusion that may arise from disputes over public office and we have

not been without our fair share of such contests in this state. Yet, they all seem to have been settled reasonably satisfactorily by proceedings at law. We are by no means certain that the intervention of a court of equity in such contest might not create as great evils as those sought to be remedied and might not make " confusion worse confounded." An injunction granted against a public officer towards the close of his official term restraining him from making appointments to office, if decided to have been erroneously granted, would work a wrong that could not be remedied. The very limitation on the modes of procedure in courts of law, that renders it necessary in many cases to appeal to a court of equity, seems to render the law courts best fitted to determine a litigation over a public office. The parties to a suit or proceeding at law are certain, the procedure is certain, the issues to be decided simple and the form of judgment certain. It does not require a very long memory to recall the fact that the greatest usurpation by a court of the right of a state to choose its own officers, a usurpation ultimately condemned by all political parties, was effected by means of an injunction. However this may be, if it is desirable to extend the jurisdiction of equity to contests for public office, that should be done by the action of the legislature.

The judgment appealed from should be reversed and the complaint dismissed, without costs.

PARKER, Ch. J. (dissenting). There is one proposition, the basic one in this controversy, about which we are agreed — every member of this court, every member of the Appellate Division, and the judge at Special Term — and that is, that the statute under which the Albany penitentiary commission have undertaken to remove plaintiff is absolutely void. All agree that it offends against the Constitution of this state, and some assert in more than one respect. Hence the legislature had not any power to pass it, and — although they did in form enact it — as the Constitution prohibits it, the result is precisely as if the act was not passed. It accomplishes

nothing. While pretending to confer authority it in fact confers none whatever. It neither authorizes action, nor can it protect one who attempts to act under it.

The majority opinion — which sustains the decisions below, in a mandamus proceeding, in compelling the county treasurer to pay plaintiff his salary as superintendent of the Albany penitentiary — concedes that the action of the commission in notifying plaintiff that on March 1, 1903, they would remove him from office, and put the sheriff of the county in possession, as the statute was intended to authorize, does not affect plaintiff's right to the salary so long as he was actually in office after that date. Why? Because the statute purporting to authorize the action of the commission is void, and, therefore, without support, and the situation is precisely the same as if nothing had been done.

Notwithstanding the invalidity of the statute, the Albany penitentiary commission proposed to oust plaintiff. This is demonstrated first, by their attempt to remove plaintiff, and put the sheriff in possession; second, by the fact that after an adjudication by both Special Term and Appellate Division that the statute is wholly void, and confers no authority whatever upon the commission, they have appealed to this court urging that — no matter if they *were* proceeding under a void statute — equity could not check them; third, by their demurrer to the complaint, by which they necessarily admit the allegations of the complaint that it is their purpose without authority of law, and in violation of law, to deprive Corscadden of the honor of his position, the salary of his office, and a home and support for himself and his family for a fixed term of years.

The question about which we differ is whether a court of equity is powerless to prevent this wrong. No one but the Albany penitentiary commission and their counsel pretends that it ought not be prevented. Certainly no judge who has heard the case has been willing to make any such assertion. But some of them *do* say that — although this Albany penitentiary commission has not any authority whatever to put

Corscadden out of office, and the sheriff in — a survey of the authorities seems to indicate that equity is powerless to prevent the wrong which, if once done, is without adequate remedy at law.

No situation precisely like this has ever before been presented to the courts of this state, and hence it is the first time that equity has had a chance to assert her power. A situation analogous in most respects to the one presented by this record was before the court in *Rathbone* v. *Wirth* (150 N. Y. 459). An unconstitutional statute purported to authorize the appointment of officials and a suit in equity was brought to restrain action by municipal officers under that statute. The suit in that case, however, was brought by a taxpayer, instead of by a person directly interested. Otherwise, it will be observed, that the situations are, in all material respects, analogous. It was objected in that case at Special Term that a taxpayer could not maintain such an action, and while the court conceded that a taxpayer could *not* have maintained such an action prior to the taxpayer's statute of 1872 as amended in 1881, it was held that since the latter amendment a taxpayer could maintain it. And the judgment declared the statute void, and restrained the municipal authorities from acting under it, and the judgment was finally sustained in this court.

That case is authority for the proposition that if some Albanian, as taxpayer, had brought this action, he could have maintained it. This plaintiff's interest is even greater than that of a taxpayer, and equity should afford relief to him as it would to a taxpayer. And it should be diligent in discovering the way to do it, inasmuch as the ends of justice would be attained by such a result. Indeed, justice to this plaintiff can only be attained by affirming the judgment in this action. We are commanded to assume from the pleadings that plaintiff has no adequate remedy at law, and such is the fact. In such case equity seeks to lend its aid, and will only be deterred from it when the result either violates some established principle of equity or will create a bad precedent.

We now come to the point of division in this court, as to

which, I think, the court below took the broader and sounder view. The majority of this court say — and cite a wealth of authority in support of it — that equity will not lend its aid to try the title to office; that election contests and disputes relating to the title to office belong to the courts of law. More authorities might have been cited in the same direction, but none whatever need have been. Such is the law of this state, as all agree.

Those cases, however, and the principle established by them, have no application to this case. It is not pretended that any one of them presents a situation like the case before us. They relate to contests between rival claimants for the same office. This case, however, does not involve the title to office in any such sense. Plaintiff is in office and entitled to draw his salary, as the majority opinion asserts, not only because he is in possession of the office, but also because he has the right to it. There is no claimant contesting the office with him, no man possessed of even a shadow of a claim of right to that office. And so we held in affirming the mandamus proceeding requiring the county treasurer to pay plaintiff's salary. And that being so, how can it be said that the title to office is involved? If there was a claimant to this office, having some semblance of authority for his claim, then these authorities would apply; but, as we have seen, there is no such claimant. Instead, there are certain commissioners of the Albany penitentiary who — as we must assume from the demurrer to this complaint — attempted to oust plaintiff from his office without authority of law. That which they have undertaken to do, and, as we must assume, will do — notwithstanding the unanimous agreement of all the judges in all the courts in which this case has been, that they have no authority for it — is to oust plaintiff from his residence, deprive his family of support promised him under lawful authority, and take away from him his salary. The situation is precisely as it would be if the board of supervisors should by resolution declare the office vacant, appoint a successor, and then proceed in a body to the penitentiary to eject the

33

incumbent by force and install him whom they had chosen as his successor. The Albany penitentiary commission have no more authority to do it than would the board of super-, visors have, for, as we have seen, their so-called authority is void, and, therefore, they have no authority whatever, and hence equity should interfere, inasmuch as plaintiff has no adequate remedy at law, as we must assume under this complaint and the demurrer thereto, and as is the fact.

Assuming, however, for the purpose of the argument only, that equity will treat this void statute with such respect as to refuse to affirm a judgment of a court of equity founded on the invalidity of the statute until a court of law has declared it void — then we should affirm, because, as a court of law, and in the mandamus proceeding, we have declared this statute to be void. We have decided in a common-law proceeding that this statute is null and void, and hence that under it there can never be developed even the shadow of a claim of title to the office held by this plaintiff. Can we justify a decision handed down on the same day, but on the equity side of the court, holding that plaintiff's title to office is involved by reason of such void statute ?

The judgments of the courts below, in the rendition of which they have been unanimous, should be affirmed.

In first case, BARTLETT, MARTIN and VANN, JJ., and PARKER, Ch. J., O'BRIEN and WERNER, JJ., in result, concur with CULLEN, J., for affirmance of order, with costs.

In second case, BARTLETT, MARTIN and VANN, JJ., concur with CULLEN, J., for reversal of judgment and dismissal of complaint ; dissenting opinion by PARKER, Ch. J., with which O'BRIEN and WERNER, JJ., concur.

Ordered accordingly.