BY THE

ST. LOUIS, KANSAS CITY AND SPRINGFIELD

# COURTS OF APPEALS

AT THE

MARCH TERM, 1910.

STATE OF MISSOURI ex rel. WILLIAM BUCH-HOLZ et al., Plaintiffs, v. THOMAS J. SEE-HORN, Judge, Defendant.

**Kansas City Court of Appeals, May 9, 1910.**

1. **PUBLIC OFFICERS: Contest for Possession of Office: Equity Jurisdiction.** In a dispute over a public office the rights of the contesting claimants cannot be determined in equity.

2. **PROHIBITION: Right of Wrongdoer to Writ.** *Held,* by ELLISON, J., dissenting, that as the writ of prohibition is not a writ of right it should not be issued at the instance of one who admits that he is violating the law in the matter concerning which he asks the writ.

3. ——: **Remedy at Law.** *Held,* by ELLISON, J., dissenting, that the writ of prohibition should not be issued where the relator has a complete remedy by law.

4. ——: ——: *Held,* by ELLISON, J., dissenting, that it is unlawful for a person claiming to be elected or appointed to an office, to take the records, books and papers of the office by force and strong hand from the incumbent who disputes his right. There is a summary remedy provided by statute (secs. 9097-9107, R. S. 1899) for such claimant to pursue by application for a warrant from a supreme or circuit judge. Therefore when such claimant has been enjoined from making such assault on the incumbent he is not entitled to a writ of prohibition against the judge issuing the injunction.

## Original Proceeding: Prohibition.

WRIT AWARDED.

(182)　　　　　　　　　　　　　　　[143 App.

*John G. Park, F. M. Hayward, Willard P. Hall* for relators.

(1) A public office, and not a mere employment, is involved herein. The commissioner of street cleaning is an officer, and not a mere employee. State ex rel. v. May, 106 Mo. 488; K. C. Charter, pp. 367-368. He is a municipal officer and not an officer "under the state" in the meaning of article 6, section 12 of the constitution. State v. Ragsdale, 132 Mo. 210. (2) In the statement herein it is made to appear most clearly that the purpose of the equity suit was to establish the title of Collins to the office of commissioner of street cleaning, and that the relief prayed by Collins depended absolutely upon said title being established by him. This conclusion is sustained by the Supreme Court of this State. State ex rel. v. Aloe, 152 Mo. 466; State ex rel. v. Withrow, 154 Mo. 397; Arnold v. Henry, 155 Mo. 48. (3) Judge Seehorn's court has no jurisdiction in an equity suit to try and determine title to said office. A court of equity has no such jurisdiction. State ex rel. v. Aloe, 152 Mo. 466; State ex rel. v. Withrow, 154 Mo. 397; Arnold v. Henry, 155 Mo. 48; In re Sawyer, 124 U. S. 200; Beebe v. Robinson, 52 Ala. 66; State ex rel. v. Judge, 48 La. Ann. 1501; Delahanty v. Warner, 75 Ill. 185; Heffran v. Mayor, 160 Ill. 550; 23 Ency. of Law, 351; 29 Cyc. 1416; 2 High on Inj. (3 Ed.), secs. 1312-1313; Marshall v. Board of Managers, 201 Ill. 9; Corscadden v. Haswell, 177 N. Y. 499; Howe v. Dunlap, 12 Okla. 467; White v. Berry, 171 U. S. 366. (4) Prohibition will lie to prevent a court of equity from considering and deciding any of said questions and rights. State ex rel. v. Aloe, 152 Mo. 466; State ex rel. v. Withrow, 154 Mo. 397; Arnold v. Henry, 155 Mo. 48; State ex rel. v. Eby, 170 Mo. 497; State ex rel. v. Riley, 127 Mo. App. 469.

*Lowe & Shannon, Lowrance & Casey* and *Paul S. Conwell* for respondent.

JOHNSON, J.—This is an original proceeding to obtain a writ of prohibition against the Honorable Thomas J. Seehorn, one of the judges of the circuit court of Jackson county, to prohibit said court from entertaining jurisdiction of an injunction suit instituted therein by Edward T. Collins against the relators. A rule to show cause was issued by one of the judges of this court and served on the defendant. At the return day, defendant appeared and filed his return. The cause is before us on the motion of relators for judgment on the petition and return.

The controversy is over the possession of the office of "commissioner of street cleaning" in Kansas City. The petition for a writ of injunction filed by Collins in the circuit court, April 20, 1910, discloses that Collins was lawfully appointed to the office April 15, 1910, by the board of public works; that immediately he took possession of the office and proceeded upon the discharge of the duties thereof; that on April 18th, a new board of public works was appointed by the mayor; that the next day the new board declared the office of commissioner of street cleaning vacant and appointed and commissioned W. E. Griffin to fill the vacancy; that Griffin is demanding possession of the office from plaintiff, who is in full possession thereof, and if not restrained, defendants will forcibly dispossess plaintiff and install Griffin and that the new board had no authority to remove plaintiff nor to appoint Griffin.

The foregoing is an epitome of the salient allegations of the petition for an injunction. Relators challenged the sufficiency of the petition to state facts constituting a cause of action in equity, but defendant ruled against them and was proceeding in the exercise

of jurisdiction over the action when relators applied to this court for a writ of prohibition.

The question we are called on to decide is this: Has the incumbent of a public office who is in possession under an honest claim of right to hold the office a remedy by injunction to prevent another claimant, under color of right, from dispossessing him by force?

Admitting in his return that he had no jurisdiction to try the title to a municipal office in an equity suit, defendant disclaims any purpose of trying such issue, but asserts in justification of his course "that a *de facto* officer, in the actual and peaceable possession of a public office, may protect that possession against irregular interference or intrusion by the writ of injunction," and, "that any other rule of law would leave the actual occupant of a public office, no matter what his legal rights might be, without remedy except that of actual force or an ignominious surrender of his office and duties to any claimant who saw proper to use force or other irregular means to obtain such possession."

If the question were new in this State, we would say that where, as here, rival claimants of a public office are contending for possession of the office, and each is acting in good faith under color of right, the claimant in actual possession should be suffered to remain in office until ousted by the judgment of a court of competent jurisdiction and the rival claimant should be compelled to resort to his remedy at law for the enforcement of his claim. Resort to force and violence should not be tolerated and if necessary, equity should put forth a restraining hand to prevent the forcible ejection of a *de facto* officer from the office he holds under color of right. This doctrine is supported by respectable authority as well as by considerations of public safety and of public order and decency. It is thus stated in 2 High on Injunctions (3 Ed.), section 1315:

"While . . . courts of equity uniformly refuse to interfere by the exercise of their preventive jurisdiction to determine questions relating to the title to office, they frequently recognize and protect the possession of officers *de facto,* by refusing to interfere with their possession in behalf of adverse claimants, or, if necessary, by protecting such possession against the interference of such claimants."

But the prevailing rule in England and America, including this State, is that courts of equity must keep hands off in political contests over the title to or possession of public offices. The rule rests on two grounds: First, that a court of chancery is conversant only with matters of property and the maintenance of civil rights, and a public office is not property; and, second, it is thought it might lead to dangerous consequences if courts of chancery assumed jurisdiction in matters of a political nature. "A court of equity is a one man power, wielding the strong force of injunction, often issued in chambers and on an *ex parte* hearing. Neither in England nor America has this power been suffered to extend to political affairs." [State ex rel. v. Aloe, 152 Mo. 1. c. 480.] "As early as the case of Tappan v. Gray (9 Paige 507) it was held by the chancellor that the court of chancery had no jurisdiction to enjoin at the suit of the incumbent of an office the intrusion of a hostile claimant illegally appointed to the office." [People ex rel. v. Howe, 177 N. Y. 499.]

The decision in Tappan v. Gray was approved by the Supreme Court of the United States in In the Matter of Sawyer, 124 U. S. 200, and the doctrine of that case has been recognized and applied in the following cases decided in other jurisdictions: Beebe v. Robinson, 52 Ala. 66; Delehanty v. Warner, 75 Ill. 185; Heffran v. Mayor, 160 Ill. 550; Green v. Mills, 69 Fed. Rep. 352. In this State, the Supreme Court has given it unqualified approval in three cases: State ex rel. v. Aloe,

supra; State ex rel. v. Withrow, 154 Mo. 397; Arnold v. Henry, 155 Mo. 48. In none of these cases was the petitioner in the injunction suit the incumbent in office, but the Supreme Court does not restrict the doctrine under consideration to the facts of the particular case but adopts it *in toto.* It was held in the Aloe case:

"A chancery court has no jurisdiction by injunction or otherwise to bar the entrance to a public office of an officer appointed thereto by the governor, nor to determine his title thereto." And in Arnold v. Henry, the court say: "Counsel have cited to our attention several cases from other jurisdictions maintaining the right to an injunction by an officer in the possession of an office to restrain an attempt to dispossess him, but in these States the courts determined the title to the office in the injunction proceedings. This is contrary to the oft-expressed views of this court." This language will not admit of two interpretations. It can mean nothing else than that a political contest over either the title to or the possession of a public office is a matter beyond equitable cognizance.

The learned trial judge erred in entertaining jurisdiction of the injunction suit. His orders in that case are vacated and set aside and the writ of prohibition is awarded as prayed.

*Broaddus, P. J.,* concurs; *Ellison, J.,* dissents.

BROADDUS, P. J.—I concur in the opinion of Judge JOHNSON for two reasons: First, because the contest is over the right to the office, which the Supreme Court of this State, in the cases referred to in the opinion, most emphatically determine is not subject to the intervention of a court of equity by injunction; and, second, because I believe the decisions contain a just and sound declaration of the law, not only as it is but as it should be, and are supported by the highest and best judicial authority of this country and Eng-

land. In my opinion, to say that a court of equity has the power to interfere between two rival claimants for office as to which is the incumbent and in possession and to enforce its decree by the power of its writ is in effect determining the right to the office, at least for the time being, and savors too much of what is termed government by the writ of injunction, a species of government which is wholly antagonistic to our form of government. The exercise of such authority by a one man power may lead to consequences of the most deplorable character. It is matter of history that under the guise of equity a court usurped the authority of a State to choose its own officers. This instance is cited in People ex rel. Corscadden v. Howe, 177 N. Y. 499, where the inconvenience arising over conflicting claims to office is discussed, if the contestants are left to settle their disputes in a court of law. Every one recognizes such inconvenience, but it is far better to suffer it than to invite the discretionary power of a one man court, as a remedy for it.

It is however suggested that the Legislature has provided a remedy for the difficulty in sections 9097-9107, Revised Statutes 1899. They are to be found under chapter 148, entitled, "Records Public." But the statute does not deal with the rights of an officer as such, but wholly as to the office itself, to records, books and papers pertaining to the office, and in cases where any officer may resign or the office become vacant for any other cause. It is the records, books and papers in charge of an officer who has resigned or where the office has become vacant for any cause, who fails to deliver them up to his successor, that the statute has in view. But there is no vacancy in the office under consideration. The plaintiff in the injunction petition claims that he is the incumbent of the office, and the petitioner for the writ of prohibition claims that he is the lawful incumbent thereof. It is not the records, books and papers of the office over which the contest is waged, but

the interrupted enjoyment of the office and its emolu-
ments.   And the remedy provided by the statute is not
by injunction but by a warrant authorizing an officer
to seize the records, etc., and deliver them to the per-
son entitled to them.   The purpose of the writ is to
place the papers in the custody of the law.   [Flentge
v. Priest, 53 Mo. 540; Price v. Adamson, 37 Mo. 146.]

ELLISON, J.—I dissent in this case, but not be-
cause I believe that title to an office may be determined
by injunction process.   As stated by Judge JOHNSON,
Judge Seehorn specifically disclaims that, in his re-
turn.   The attorneys each agreed at the argument that
that could not be done and I do not think it is in the case
at all. The judge states in his return, as stated by Judge
JOHNSON, that he was only proposing or intending
to investigate whether Collins was, in truth, a *de facto*
officer in possession of the office; and if he was such
incumbent, whether relator was undertaking to intrude
therein, take possession and turn him out by force.

The question presented by the return has not been
decided in this State.   The cases decided by our Su-
preme Court did not involve the question; and I do not
deem it necessary to discuss it, or express an opinion
on it, for the reason that prohibition, not being a writ
of right, and its issuance being within the discre-
tion of the court (Davison v. Hough, 165 Mo. 561, 575;
High Ex. Leg. Rem., sec. 765), it should never be
granted on the application of one who has himself
broken the law in the matter in controversy.   That the
relator has violated the law by taking it in his own
hands and substituting force for legal procedure or
process, I regard as confessed by the motion for judg-
ment.

And the writ should be denied for the further rea-
son that it is not allowed when the applicant therefor
has a remedy by legal means, sufficient to afford the
relief the case demands (State ex rel. v. Aloe, 152 Mo.

466, 483; High Ex. Rem., sec. 770). Relator, in the first instance, could have had a summary remedy by legal process. And if, disregarding that remedy and using force, he should have been permanently restrained from seizing the office, its books, etc., he would still have had that remedy.

It must strike the most indifferent observer as a singular deficiency in our legal system that any one making claim to an office, however illegal it may be, could, with force and strong arm, invade the possession of the incumbent, take possession of the books, records, papers and their place of deposit, and turn him out, and he be left helpless.

And on the other hand, that an incumbent could willfully hold possession of such office after proper notice of the qualification of a duly elected or appointed successor, and the latter be left without remedy, except by the slow and tedious process of contest in court, which, in many instances, would outlast the term to which he had been elected or appointed.

Such unseemly condition presented itself to the mind of the Legislature long ago and a law was enacted to meet it, which has been carried in revision down to the present time. [Secs. 9097-9107, R. S. 1899.] It is provided by that statute that an officer shall deliver to his successor the records, books and papers of the office; and that if he fails to do so any judge of the supreme or circuit court may, on proper application, issue his warrant to the sheriff commanding him to take such records, etc., and deliver them to the successor named in the writ. But any one aggrieved by such warrant may likewise apply to a judge of the supreme or circuit court, and, on showing by affidavit that injustice has been or is about to be done by such warrant, the judge must issue a citation to the parties interested commanding them to appear before him, when a summary hearing will be had and the matter determined according to right and justice.

Happily, occasion for this summary procedure has rarely arisen. It has, however, been brought into requisition in two instances which have reached the Supreme Court. [Price v. Adamson, 37 Mo. 145, and Flentge v. Priest, 53 Mo. 540; s. c. 57 Mo. 515.] In the latter case, as first reported, the law was held to be constitutional, and it was held that the summary remedy provided did not determine or conclude the ultimate rights of the parties, and that such rights could be ascertained in proper legal proceedings.

It is thus seen that the statute provides ample means for relator to obtain, in a legal and orderly manner, that which, we must assume from the pleadings, he was endeavoring to get by taking the law into his own hands. By this statutory means, unseemly conduct, disorder and breaches of the peace are avoided.

It follows the writ should have been denied and the petition dismissed.