# N. Y. SUPERIOR COURT.

## Francis A. Palmer agt. John Foley.

The provision made by law to try the *title to a public office* is exclusive and not cumulative. Whenever it is alleged that a person has usurped a public office, the attorney-general is authorized to institute an action on behalf of the people, to try the right of such person to the office, and in such action the right of any other claimant to the office may also be determined.

These provisions furnish the *only* remedy for the trial and determination of such questions, and they prohibit their trial in any other manner.

The defendant, under an appointment by the city comptroller to the office of deputy chamberlain, undertook, by threats, &c., to intrude into and to take possession of that office, and to oust the deputy in possession and doing the duties of the office under the appointment of the chamberlain, the plaintiff.

*Held*, that the process by *injunction* was the proper remedy of the plaintiff, and should be sustained upon the principle that it is a proper substitute for another remedy, which, had it been adopted, might have produced confusion and disorder in a public office, and perhaps serious loss to the city, if not to the immediate parties concerned.

For the plaintiff, until the title to the disputed office should be tried and established by due course of law, as the responsible custodian of the treasury of the city, and of the office in which his official business is transacted, and of the books and papers connected therewith, could properly exclude the defendant therefrom, and with force, if necessary, to prevent the usurpation of the office, or that he could demand the aid of the civil authority to protect the office from any unwarrantable intrusion; but, instead of asserting his right thus to exclude the defendant, has adopted a measure more conformable to peace and order.

The object of the process of injunction is both preventive and protective. It seeks to prevent a meditated wrong, and not to redress an injury, which can usually be done only at law, and then to protect a party against any unlawful invasion of his rights.

The general object and use of the process of injunction considered.

Palmer agt. Foley.

APPEAL from an order continuing an injunction.

*Heard at the March General Term*, 1873.

*Before* MONELL, FREEDMAN *and* CURTIS, *JJ.*

The action was by the plaintiff, the chamberlain of the city, to restrain the defendant, who claimed to be deputy chamberlain under an appointment by the comptroller, from intruding upon the office. An injunction was granted and continued by the special term.

From this order the defendant appealed.

The plaintiff was appointed chamberlain of the city of New York January 6th, 1872, and was in the possession and exercising the duties of his office and claiming the right under chapter 623, laws of 1866. On the sixteenth day of May, 1873, appointed Walter B. Palmer to be deputy chamberlain, who, thereupon, took the oath of office and entered upon the duties as such deputy.

The defendant claimed that on the sixth day of January, 1873, he had been appointed deputy chamberlain by Andrew H. Green, comptroller of the city of New York, who claimed the right under section 32, chapter 137, laws of 1870, and had taken the oath and given security in a bond of two hundred thousand dollars ($200,000), and the bond approved by the comptroller.

That acting under such appointment defendant endeavored to enter and take possession of the office of deputy chamberlain, but plaintiff refused to recognize the appointment of defendant and brought an action to restrain him from intruding into or performing any of the duties of deputy chamberlain of the city of New York. Other facts appear in opinion of chief justice BARBOUR, rendered at special term and reported, vol. 44, *How. Pr. Rep.*, 308.

R. W. TOWNSEND & A. R. DYETT, *of counsel, for appellant.*

A. R. LAWRENCE, Jr., & JOHN W. EDMONDS, *of counsel, for respondent.*

*By the Court*—MONELL, *J.* I do not think it necessary in this case that it should be determined where the power resides to appoint a deputy chamberlain of the city, whether in the chamberlain or in the comptroller.

The consideration of that question would be, in effect, the trial of the *title* to the office, which cannot be done in so collateral or incidental a manner.

The provision made by law for the trial of such questions is exclusive and not cummulative. Whenever it is alleged that a person has usurped a public office, the attorney-general is authorized to institute an action, on behalf of the people, to try the right of such person to the office (*Code*, § 432). And in such action the right of any other claimant to the office may also be determined (*Id.*, § 436). These provisions furnish the *only* remedy for the trial and determination of such questions, and they prohibit their trial in any other manner. This is established by many cases (*Hall* v. *Luther*, 13 *Wend.*, 491; *People* agt. *White*, 24 *id.*, 525; *Mayer* agt. *Tucker*, 1 *Daly*, 107; *Tappan* agt. *Gray*, 9 *Paige*, 507).

In the last case cited, which was affirmed by the court for the correction of errors (7 *Hill*, 259), the power of the court to try the question, even as a means of affording some other relief, was examined, and the chancellor says that jurisdiction ought not to be assumed to oust an officer from an office held under the color of title " until his right to such office has been settled in the mode prescribed by law."

Walter B. Palmer received his appointment as deputy chamberlain from the chamberlain, who assumed, at least, to possess the power to make the appointment. He took possession of the office and has since discharged its duties. This gave him sufficient color of title to constitute him the *de facto* deputy, entitling him to hold the office until ousted by the judgment of the court (*Parker* agt. *Baker*, 8 *Paige*, 428). And being in possession he is presumed to hold *de jure* also.

If the relief, therefore, which is sought in this action depended upon its being first determined that Palmer was not

legally appointed to the office, it could not be obtained. His title to the office cannot be determined in this way.

But the action is instituted by the person who is the *incumbent* of the office of chamberlain, not *eo nomine*, but under the allegation that he is the chamberlain, in possession of the office, exercising the powers and discharging the duties appertaining to it, and that, claiming to possess the requisite power, he had appointed said Palmer to be deputy chamberlain, who, as such deputy, had taken possession of the office, and had entered upon the discharge of its duties.

It is then alleged that the defendant had intruded upon, and had attempted to take possession of the same office, and had demanded his recognition as the deputy of the chamberlain, and had declared his intention to exercise the powers and discharge the duties of the office, notwithstanding the refusal of the plaintiff to recognize his right to do so.

The relief demanded is that the defendant be restrained from intruding into the office, and from exercising any of its functions, until (for such is the only effect of the injunction) his right to the office has been established by law.

The allegation in the complaint, of the appointment of Palmer by the plaintiff, and the denial by the defendant of such appointment, or of any power in the plaintiff to make the appointment, and the additional averment that the defendant was the legally appointed deputy chamberlain, do not confer any power on the court to try the question of title.

Such right cannot be determined in *this* action; nor, as I understand the plaintiff's prayer for relief, to require the court to make such determination, the prayer being merely that the defendant be prevented from intruding into the office until his right to it has been determined in a proper action.

It is alleged that, upon the plaintiff's refusal to recognize the defendant as the deputy chamberlain, the latter gave notice and proclaimed "that he intended, at all events, to exercise the duties and powers of the office."

Palmer agt. Foley.

From this it naturally follows, as a proper implication, that the defendant intended, in performing his official duties, to occupy a portion of the chamberlain's apartments, and to use such of the books and papers therein as he might require.

The intrusion, therefore, which is sought to be prevented, is not a mere constructive or technical taking possession of the office, but a physical or manual entering by the defendant into the apartment assigned to and occupied by the city chamberlain, and taking possession of one of the desks therein and *thus* attempting to exercise the powers and discharge the duties of deputy chamberlain.

It cannot be doubted, I think, that a similar intrusion by a stranger into the apartment occupied by a public functionary would properly be regarded as a *trespass*, justifying the incumbent of the office in removing such stranger therefrom; and in doing so to use, if necessary, such reasonable force as might be required.

There is a responsibility resting upon every public officer for the preservation and safety of the books, records and other property committed to his custody and care, which give him the right in protecting such property to exclude persons from his apartments who improperly, either in point of time or manner, attempt to interfere with the custody of such property or with the orderly discharge of his official duties.

A public office is not so entirely public property that all citizens have an equal right to enter into and occupy it. The incumbent of the office is the agent of the people, clothed with authority to exercise certain powers and to discharge certain duties for their benefit, and for that purpose is intrusted with and held responsible for the care and safety of the public property. And although the public may, for the transaction of business, enter a public office and have reasonable access to the public records, books and papers, such right, nevertheless, must necessarily and very properly be subordinated to the power and control of the official in whose custody the public has placed such property. And in the proportion

Palmer agt. Foley.

that the responsibility of the official is greater, must his power be increased. This is peculiarly so with officers who are the custodians of the public treasure.

It would be most unsafe to allow a miscellaneous intrusion into his office, or any unwarranted interference with the discharge of his duties; and he should, therefore, be clothed with all requisite authority to exclude and prevent any such improper or unlawful intrusion or interference with it.

It is not inapt to say of the chamberlain's office that it is one of high and peculiar responsibility and importance. The whole city treasury is in his custody, amounting annually, as is alleged, to at least fifty millions of dollars; for the safety of which and its legal disbursements the chamberlain is accountable.

For the protection of this large sum, and its legal disbursement, the city chamberlain has peculiarly strong claims upon the law, and has the right to be not interfered with, except upon the most justifiable grounds, and then only in the mode prescribed by law.

And, in this connection, it is proper to say that the office of deputy is made by statute equal to the superior officer during his absence or inability to act (*Laws of* 1866, *chap.* 623), the law clothing the deputy with all the powers possessed by his superior, and rendering the office one of peculiar importance.

If, as I believe, the power exists as to a stranger, and if in this case the public official may, for the protection of his office, justly exclude such person from attempting to usurp any of its functions, then it follows, I think, that the right to exclude the defendant in this case from entering into the apartments officially occupied by the plaintiff must be recognized. The appointment of the defendant to the position of deputy chamberlain by an authority not recognized or admitted by the plaintiff, does not of itself, or necessarily, confer upon him any such right of office which, as between himself and the principal officer, would change their relations.

The defendant is not in possession of the office. He is not, therefore, *de facto* deputy, and clearly he cannot, for the purpose of this action, be considered a *de jure* deputy, nor probably a deputy in any aspect, until his right to the office has been established in the manner provided by law. The defendant, therefore, cannot claim any right or privilege growing out of his alleged appointment, and he stands in no better attitude than a mere stranger, except that he may invoke the aid of the attorney-general to proceed against the present incumbent to try the title of the office. But at present he cannot have possession of the office, nor can he enforce a recognition of himself as the legally constituted officer. He must wait until the disputed question is determined in his favor by a judgment in a proper action.

This view of the defendant's position and rights is, I think, fully maintained in the following cases : *Conover* agt. *The Mayor of New York* (5 *Abb.*, 393); *Matter of Welsh* (14 *Barb.*, 396); *Devlin's Case* (5 *Abb.*, 281); *Matter of Davis* (19 *How. Pr. R.*, 323 ; *Mott* agt. *Donnelly* (50 *Barb.*, 516, *where other cases are cited*); *Matter of Davis* (19 *How. Pr. R.*, 323.)

This question is not affected by the provision of the Revised Statutes (1 *R. S.*, 125, § 50, *&c.*) conferring power on the court to require the delivery of books and papers to a successor in office. Yet, even under that statute, the court cannot try the *title* to the office (*People* agt. *Allen*, 42 *Barb.*, 253), but may make an order for the delivery of the books upon a *prima facie* case of right in the plaintiff, leaving, however, the question of title undisturbed.

Under this inability, therefore, to try the title to the office in this action, the defendant must be regarded as having no other, further or greater right than any other citizen ; and his acts, in reference to the office he claims, must be subjected and subordinated to the power which the chamberlain possesses to protect the office from any improper intrusion.

In the view of the rights of the respective parties, the only

question, therefore, is, can an injunction, which has for its purpose the restraining of the defendant from entering upon, interfering with or assuming the duties of the disputed office be sustained? That the plaintiff, as the responsible custodian of the treasury of the city, and of the office in which his official business is transacted, and of the books and papers connected therewith, could properly exclude the defendant therefrom; and with force, if necessary, prevent the usurpation of the office, or that he could demand the aid of the civil authority to protect the office from any unwarrantable intrusion, will not, perhaps, be doubted. But it may be questioned if that is not the only remedy the plaintiff can command.

The plaintiff desires that he and the person he has appointed as his deputy may be undisturbed in the office they occupy and claim legally to fill; and instead of asserting his right by bringing to his aid the maxim of the law "*domus sua cuiquest tutiesimus refergium*," he had adopted a measure more conformable to peace and order.

The earliest jurisdiction, if not at that time the chief business of the court of chancery was in assaults, trespasses and a variety of outrages, which, although cognizable at common law, the party complaining was unable to obtain redress in consequence of the protection afforded to his adversary by some powerful baron or high officer of the county in which the acts occurred (1 *Cooper Pub. Rec.*, 359; 1 *Story Eq.*, § 48). And the jurisdiction, in cases of trespass to property, has been continued to the present time (2 *Story Eq.*, § 928), and is sustained upon the principle of irreparable mischief, a principle which has since been incorporated into the Code (*Code*, § 219).

No exact limit is placed upon the jurisdiction in this class of cases. The complainant must have been in the previous undisturbed enjoyment of the property under a claim of right, and it must appear that the relief at law is inadequate.

If the relief consists in restraining the continuance of some act of the defendant, there is no line marked out by any

adjudged case to which the jurisdiction must be confined; and from the nature of things, it must forever remain undefined ( *Willard's Eq. Jur.*, 408).

There is no want of analogy between trespass to property and to the person, or to a personal right in respect to the claim for protection.

In respect to the use of preventive process, the jurisdiction ought to be, and therefore is the same; and if it is proper in one case to exercise the jurisdiction to prevent a wrong threatened to be done to mere property, how much more proper is it to use the same power to arrest premeditated wrong to the person or personal rights?

The object of the process of injunction is both preventive and protective. It seeks to prevent a meditated wrong, and not to redress an injury which can usually be done only at law, and then to protect a party against any unlawful invasion of his rights.

The mere novelty of the action, or that the relief sought is possibly without precedent, is not, in my judgment, sufficient to defeat it, if there is principle to sustain it; and I think it should be sustained upon the principle that it is a proper substitute for another remedy, which, had it been adopted, might have produced confusion and disorder in a public office, and perhaps serious loss to the city, if not to the immediate parties concerned.

The course of the plaintiff should, I think, therefore be commended and sustained, and his action not be dismissed because he has thought it proper to apply to the court to protect him in his office against what he claims is an attempt at an unwarrantable intrusion.

In *The Mayor*, &c., agt. *Flagg* (6 *Abb.*, 296), a controversy arose between two rival claimants of a municipal office. Pending an action to try the title to the office, the Mayor, &c., obtained an injunction restraining the comptroller from recognizing the acts of either, and each from acting or asserting any claim against the city.

The injunction was sustained on the ground that it was right to come to the court for protection from the conflicting claims until the right to the office had been obtained by one or the other.

In *Tyack* agt. *Bromley* (4 *Edw. Ch. R.*, 258), which was a controversy between different persons claiming the same office, the complainant alleging that the defendants had attempted to usurp the office, the latter were restrained from interfering with the complainant's duties.

The vice-chancellor, in sustaining the jurisdiction of the court, says (*p.* 270): " Courts of justice are bound to aid a party in possession of rights, whether they be natural or artificial, or such as are mere creations of law, whenever those rights have been infringed or their destruction threatened. It is a familiar head of equity jurisdiction to protect by injunction statutory rights and privileges which are threatened to be destroyed or rendered valueless to the party by the unauthorized interference of others; and although it was not proper for equity to restrain in the first instance where there was doubt, yet it would do so without requiring the establishing of the right at law where a clear case of *common*-law right was presented, and the party is in possession and enjoyment of the right which is threatened to be destroyed or rendered valueless."

For these reasons it was right, I think, for the plaintiff to come to the court and demand an injunction restraining the defendant from exercising or attempting to exercise the functions of his alleged office, until his right to the office had been duly established.

I am, therefore, in favor of sustaining the injunction. But as the defendant's counsel claimed that the injuction restrained him from trying the question of title in any action, it should be modified (if the defendant desires it) so as to allow the bringing of an action to try the title to the office.

The order appealed from, thus modified, should be affirmed, with costs.

---

Palmer agt. Foley.

---

FREEDMAN, *J.*, concurred.

CURTIS, *J.*, dissenting. The plaintiff alleges in his complaint, that being chamberlain of the city of New York, and empowered by the act of April 17, 1866, to appoint a deputy chamberlain, he in May, 1872, appointed Walter B. Palmer such deputy, who thereupon took the office, gave the required security, entered upon the duties of the office, and has since continued to hold the office and discharge its duties. He further alleges, that the defendant has intruded upon and attempted to enter into and take possession of that office, but that the plaintiff has refused to recognize him as deputy chamberlain, and denies that the defendant is lawfully appointed, and avers that such intrusion of the defendant is calculated to produce confusion in the city and county treasuries and increase the responsibility of the plaintiff, and jeopard the receipt and enjoyment by the plaintiff of the proper emoluments of his office. The plaintiff asks that the defendant be restrained from exercising any of the powers or performing any of the duties of the office, and that in the meantime, and until further order of the court, the defendant be enjoined from any intrusion into the office, and from exercising any powers or performing any duties appertaining thereto.

The defendant by his answer avers that the plaintiff had no power to appoint Walter B. Palmer deputy chamberlain; that so much of the act passed April 17, 1866, as authorized the chamberlain of the city of New York to appoint a deputy chamberlain was repealed by the act passed April 5, 1870, which conferred on the comptroller of the city of New York the power to make such appointment, and that in accordance therewith the defendant was, on the 6th day of January, 1873, duly appointed by such comptroller to the office of deputy chamberlain, and was duly qualified as such.

The title to the office cannot be tried in this action. The question that arises on the appeal from the order at special term is, whether the act of April 17, 1866, by which the cham-

berlain was authorized to appoint the deputy chamberlain, was repealed by the act of April 5, 1870.

The latter contains the following provisions:

" § 33. The finance department shall have control of all the fiscal concerns of the corporation and of the appropriations made for carrying on the business of the corporation. It shall prescribe the forms of keeping and rendering all city accounts, and the manner in which all salaries shall be drawn, and the mode by which all creditors, officers and employes of the corporation shall be paid."

" § 34. All accounts rendered to or kept in the other departments shall be subject to the inspection and revision of the officers of this department, and it shall settle and adjust all claims in favor of or against the corporation, and all accounts in which the corporation is concerned as debtor or creditor."

" § 35. The chief officer of this department shall be called the comptroller of the city of New York."

" § 32. The head of all departments, except as otherwise specifically directed herein, shall have power to appoint and remove all chiefs of bureaus (except the chamberlain), as also all clerks, officers, employes and subordinates in their respective departments. The number of all officers, clerks, employes and subordinates in every department (except the police and fire departments), with their respective salaries and compensations, shall be such as the head of each department shall designate and approve, except that the aggregate expense thereof shall not exceed the total amount duly appropriated by law to each department for such purposes."

The same act further provides in section 120 that " all acts or parts of acts inconsistent with the provisions of this act are also hereby repealed."

By the language of this act the comptroller is made the head of the department of finance, with full control and responsibility in respect to the fiscal concerns of the corporation, and with power to appoint and remove all clerks, offi-

cers, employes and subordinates, and chiefs of bureaus, except the chamberlain, in his department. While the language of the act thus clearly empowers the comptroller to appoint the deputy chamberlain, it remains to be seen whether that language fails to express the intention of the legislature, as is claimed on the part of the plaintiff.

It is urged by the plaintiff that the act of 1866 has been until now acted upon as if still in force, and that in the absence of the chamberlain, however temporary, the deputy has the custody and control of millions of the public money, and that this claim of power by the comptroller to appoint the deputy chamberlain takes away from the chamberlain the control over and custody of the public moneys.

It is also insisted that the chamberlain and all the employes in his office should be entirely independent of the comptroller, and therefore the laws of 1866 and 1870 together provide that the chamberlain should be appointed by the mayor, and hold his office for a definite period, and his subordinates should be appointed by him and hold office during his pleasure, and that to confer upon the comptroller the power to appoint either the chamberlain or his subordinates would effectually destroy that system, and would give to the comptroller power over the public funds far beyond that expressly given to him in the language of any statute.

It is further urged on behalf of the plaintiff that this theory that the chamberlain and his employes should be independent of the comptroller, is so just and so in accordance with the general legislation of the state in respect to local governments, that the legislature could never have intended that the chamberlain, with his liabilities for the custody of the public moneys, should be without the powers to appoint his deputy and clerks. In order to determine whether the plan was so just and wise that the legislature in 1870 must be deemed not to have intended to change it, we may look at the history of its operation. From 1857 until the passage of the act of 1866 the chamberlain was without power to appoint his subordinates.

Since then he has exercised that power, but it does not appear that such exercise of power by the chamberlain and independence on his part of the comptroller, has, during the latter period, been accompanied with any such advantages to the city and county in respect to the preservation and custody of the public moneys, that the legislature cannot be deemed to have intended to make the change expressed by the language of the act. The papers on the appeal fail to show any such beneficent results accruing from the increase of power to the chamberlain under the act of 1866 that would justify the presumption that the law-makers did not intend to repeal it. As far as can be gathered from the statute itself or from these extrinsic circumstances, it is difficult to discover that the intention of the legislature was that claimed for it by the plaintiff.

Neither does the claim that the comptroller, after the passage of the act of 1870, acquiesced in the exercise of the appointing power by the chamberlain, or that the loss of it would increase his responsibility, or diminish his control of the public moneys, shed any light upon the intention of the legislature. The acquiescence of the comptroller in the exercise of this power by the chamberlain can in no way serve to interpret or give construction to the statute, the language of which is clear, and which for anything that is apparent is such as will best protect the public, however much it may increase the responsibility of the custodian or affect the control of the public funds. It may have been the promptings of wisdom, enlightened by the experience of the past, that guided the action of the legislature in conferring upon the comptroller the power of appointing the deputy in the chamberlain's office.

Occasions may arise when the public treasury will be better protected by the exercise of this power on the part of the comptroller than by leaving it entirely in the keeping at any time of subordinates of the chamberlain's own creation, and it is difficult to sustain the proposition that the statute must

be construed upon the basis that the legislature never could háve had these contingencies in view, and never intended to provide against them.

It is suggested that the provision in the second paragraph of the thirty-second section of the act of 1870, which directs that the salaries of all those officers, clerks and subordinates that are to be appointed by the heads of departments shall not exceed the total amount duly appropriated by law to each department for such purpose, is inconsistent with the law previously and still in force, directing that the salaries of the deputy and clerk in the chamberlain's office shall be paid by the banks in which he is required to deposit the public moneys; and that, therefore, the chamberlain's deputy and clerks were not intended by the legislature to be included among those officers whom the comptroller was authorized to appoint.

It is not easy to see any inconsistency when this provision of law directing the payment of the salaries of the chamberlain's deputy and clerks by the banks which are the depositories of the public funds, is itself viewed as an appropriation. This action of the legisláture is simply an appropriation of a portion of the interest money belonging to the public, and accruing upon the public money from the deposits of it with the banks, in accordance with the law. The ordering of the payments of these salaries by the banks from these interest moneys due by them to the public, is an appropriation to that extent towards the total amount appropriated by law to the department of finance, and is an appropriation from that part of the public money of the amount of those salaries, and so far from there being any inconsistency in the action of the legislature, it seems, viewed in this aspect, to harmonize with the theory that the intention of the legislature is best indicated by the language it employed, and that this language was that which was best calculated to guard the public treasury.

The state may impose onerous duties and great liabilities upon its public servants, but that is not an element for con-

sideration in giving construction to a statute. The state always keeps open another avenue for their relief.

It was justly stated by the learned judge at special term, that this is the personal action of the plaintiff as an individual, and can be maintained upon no other theory than that he is entitled, upon the facts set forth in the complaint, to relief by way of injunction as a matter of private and personal right, and that the right of the plaintiff to an injunction is not to any extent founded upon the allegation in the complaint of the appointment of Walter B. Palmer as deputy chamberlain, but that the important question in the controversy is, whether the defendant is the deputy chamberlain, as it constitutes the sole ground of his defence by way of justification. It is to this question these considerations relate, and if the conclusions arrived at as to the construction to be given the statute are correct, they justify the defendant in presenting his claim, and demanding that he be allowed to enter upon and discharge the duties of the office. But as the defendant claims an office which is already and has been for a long time in the possession of a person who is *de facto* discharging its duties under color of title, he should, as such claimant, establish his right by due course of law. The steps for him to take are indicated in the Code, sections 432 to 438, and he has no right to seek redress by any force or violence. Any attempt of that nature would be unlawful, and is to be repelled by all lawful means. The very existence of society is dependent upon the maintenance of this principle.

It does not appear by the papers that there has been any resort to force or any threats of resorting to force by the defendant, or that he has taken any other course than such as he might lawfully take in presenting a claim and demanding its allowance by a party in adverse possession.

The law is to be presumed strong enough to protect a party that is in possession of an office, and discharging its duties under color of title, from forcible ouster by a claimant who refrains from seeking to establish his alleged rights by due

Palmer agt. Foley.

process of law.   An injunction should not be granted upon the suspicion of the incumbent that he may be forcibly ousted. Such a precedent is undesirable.

In the present case it does not appear that there is any just reason to fear that force will be resorted to by the defendant, or that the law is not strong enough to restrain and punish such an act.

The defendant claims that the injunction order appealed from restrains him, among other things, from discharging the duties of the office, even if he should establish his right to it by law, and such a construction may be given to it, but on the argument the plaintiff's counsel waived any such claim. Still, in the view here taken, there is no necessity for the injunction, and the order appealed from, allowing it, should be reversed, with costs to the defendant.