priation of plaintiff's rights is under all the circumstances of the case unreasonable may be conceded. The unreasonableness of the use is a fact which must necessarily be established and appear as a fact found, or as a necessary inference from other facts found. McCarthy v. Natural Carbonic Gas Co., 189 N. Y. 40, 47, 81 N. E. 549, 13 L. R. A. (N. S.) 465. The destruction and damage of plaintiff's property, to the extent and in the manner found by the court as facts, clearly discloses the inference that defendant's use of its pumping plant while soft coal was used as fuel was unreasonable under all the circumstances, and therefore an express finding to that effect is not necessary. Even if necessary, the presumption might be indulged in support of the judgment that this fact has been found in favor of plaintiff.

Judgment affirmed, with costs. All concur.

---

(127 App. Div. 591.)

MOIR v. PROVIDENT SAVINGS LIFE ASSUR. SOCIETY OF NEW YORK et al.

(Supreme Court, Appellate Division, First Department. July 8, 1908.)

1. QUO WARRANTO — RIGHT TO CORPORATE OFFICE—EXCLUSIVENESS OF REMEDY BY QUO WARRANTO.

A court of equity has no inherent power to try the disputed title to corporate office and to enjoin one in possession from the exercise of its functions at the suit of a rival claimant. This may be done and judgment of ouster rendered only in an action of quo warranto instituted by the Attorney General in the name of the people.

2. INJUNCTION—SUBJECTS OF RELIEF—CORPORATIONS—RIGHTS OF STOCKHOLDERS—STATUTORY PROVISIONS.

Code Civ. Proc. § 603, provides that, "where it appears from the complaint that the plaintiff demands and is entitled to a judgment against the defendant, restraining the commission or continuance of an act, the commission or continuance of which, during the pendency of the action, would produce injury to the plaintiff, an injunction order may be granted to restrain it. The case provided for in this section is described in this act, as a case, where the right to an injunction depends on the nature of the action." Section 604 provides that "in either of the following cases an injunction order may also be granted in an action: (1) Where it appears by affidavit, that the defendant, during the pendency of the action, is doing, or procuring, or suffering to be done, or threatens, or is about to do, or procure, or suffer to be done, an act in violation of the plaintiff's rights respecting the subject of the action, and tending to render the judgment ineffectual, an injunction order may be granted to restrain him therefrom." Plaintiff, suing in behalf of himself and all other stockholders of a corporation, alleged that certain defendants were the owners of a majority of the capital stock, and through their representatives and parties in interest in its board of directors were in complete control of its affairs; that they agreed to sell certain stock to another of defendants, and, in pursuance of the agreement, caused shares of stock to be transferred to certain persons to enable them to act as directors; that such persons at the time of their election as directors were merely dummies, having no actual ownership of the stock standing in their names; that, in pursuance of a conspiracy to obtain control of the affairs of the corporation to the detriment of the stockholders, defendant directors went through the form of adopting a resolution accepting an alleged resignation of defendant G., and adopted a further resolution electing defendant O. to fill the vacancy; that G. had made no offer to resign as director; that such action would cause irreparable injury to the corporation and

its stockholders, and plaintiff prayed judgment enjoining O. from acting as director, enjoining the other defendants from permitting O. to act as director, and from refusing to permit G. to act as such, and annulling the alleged election of O. *Held*, that the complaint stated no cause of action cognizable in a court of equity, nothing being sought to be determined but the title to the office of one director, and that neither of said sections authorized the injunction prayed; the action not being one in quo warranto, nor a summary proceeding to determine the election of directors.

Appeal from Special Term.

Action by Henry Moir, a stockholder of the Provident Savings Life Assurance Society of New York, suing on behalf of himself and all other stockholders, against the Provident Savings Life Assurance Society of New York and others. From an order granting an injunction pendente lite, defendants appeal. Reversed, and application for injunction denied.

Argued before INGRAHAM, McLAUGHLIN, SCOTT, HOUGHTON, and CLARKE, JJ.

Rose & Putzel and Wm. P. Dewey (Benjamin G. Paskus, of counsel, and Wm. P. Dewey and Walter N. Seligsberg, on the brief), for appellant the Assurance Society.

Dominick P. Benson, for other appellants.

Sullivan & Cromwell (William J. Curtis, of counsel, and Royall Victor, on the brief), for respondent.

CLARKE, J. Plaintiff, suing on behalf of himself and all other stockholders of the Provident Savings Life Assurance Society of New York, alleges in his complaint: That the society is a corporation organized and existing under the laws of the state of New York for the purpose of conducting the business of life insurance. That under its charter its corporate powers are vested in a board of directors of 15 persons, divided into four classes, 4 directors retiring each year, with the exception only that 3 directors retire every fourth year. That the plaintiff is the owner and holder of 10 shares of capital stock, and is a member of its board of directors. That the total capital stock consists of 1,250 shares of the par value of $80 each. That prior to October 7, 1907, the defendants Orlando F. Thomas and Edward R. Thomas owned and were the holders of record of a large majority of the capital stock of said corporation, and through their representatives and parties in interest in its board of directors were in complete control of its affairs. That on October 5, 1907, the said Thomases entered into a contract in writing with the defendant Coyle, wherein, among other things, they agreed to sell to him 1,056 shares of the capital stock of said corporation in consideration of the payment to them by said Coyle of $100,000 in cash, and the delivery to them by said Coyle of an aggregate of $1,000,000 of his promissory notes, payable at different times, and it was provided that said Thomases should retain said 1,056 shares as collateral for the payment of said promissory notes, with the exception of 8 shares thereof, which should be transferred into the name of said Coyle or his nominees for the purpose of qualifying them to act as directors of said corporation. Said contract contained the following provision:

"Ninth. On the signing and delivery of this agreement, the parties of the first part (the said Thomases) shall cause to be elected as directors of the Provident Savings Life Assurance Society of New York, at least eight nominees, and deliver the resignations of the remaining seven directors and also the resignations of all the officers of the said company unto the party of the second part (the said Coyle), or his assigns, but the parties of the first part, or two of their nominees shall be elected or appointed on the· finance committee, and both parties of the first part shall continue as directors and one a member of the finance committee until the whole consideration herein mentioned be fully paid."

That, in pursuance of said contract, the Thomases caused eight shares of the capital·stock to be transferred into the names of defendants John J. Coyle, John C. Grady, Charles M. Brumm, John J. Moore, John B. Wurtz, George J.· Elliott, Henry Brooks, and John W. Phillips, and on October 7, 1907, the said persons were elected, did qualify and become members of the board of directors. That all of said persons were at the time of their said election merely dummies and tools of the defendant .Coyle, and had no actual ownership of the one share of stock standing in their respective names, or interest in the Provident Society in any respect whatsoever. That since October 7, 1907, and before March 25, 1908, the defendant McSorley, a dummy and nominee of the defendant Coyle, has been elected a director in the place of said Elliott, resigned, and the defendant Sulger, another dummy and nominee of the defendant Coyle, has been elected a member. of said board in the place of said Brooks, deceased. That on March 7, 1908, the defendant Coyle was elected to fill a vacancy in said board created by the resignation on that date of said Phillips. That at all the times in this complaint mentioned the defendants McSorley, Brumm, O'Keefe, Moore, Wurtz, Sulger, and Grady have been and now are dummies for and nominees of said Coyle without any actual ownership of the one share of stock standing upon the books of the said corporation, and in their respective names, or any financial interest in the said society and subject entirely to the orders and directions of said Coyle, and without any capacity or desire to exercise, without the direction of said Coyle, the powers and perform the duties as directors of said society. That all of said directors of the said society have conspired and agreed, and are now conspiring and agreeing, with the said Coyle, unlawfully and wrongfully, to subvert the rights of the stockholders of said society and perpetuate the control of said Coyle over the said society, and the management of its affairs and funds, to the detriment and injury of the stockholders of said society and its policy holders. That, in pursuance of said conspiracy, the said defendants constituting a majority of the board of directors on March 6, 1908, at a special meeting of said board, and without notice of any kind to the stockholders of the corporation, passed a resolution of said board providing for the closing forthwith of the stock books of the society, although the by-laws contained no provision whatever authorizing the closing of its stock books, and against the advice of counsel for said company. That said stock books remained closed until March 27, 1908, at which time ovners of stock demanding transfer thereof obtained an order requiring the said defendants to show cause why they should not be enjoined from

refusing to make transfers of stock, and, upon the service of such order, the stock books were opened for such transfers. That in further pursuance of said conspiracy the said defendants, constituting a majority of said board, on March 27, 1908, went through the form of adopting an alleged resolution accepting an alleged resignation of the defendant Gilbert, and on the same date adopted a further resolution electing the defendant O'Keefe to fill the alleged vacancy created by the alleged resignation of said Gilbert. That the action of said defendants in purporting to accept the alleged resignation of Gilbert, and in purporting to elect the said O'Keefe as such director, was wholly illegal and fraudulent, was made for the purpose of unlawfully and illegally perpetuating the control of said Coyle over the affairs of said corporation, and in fraud of the rights of its stockholders and in pursuance of said conspiracy; and, unless the plaintiff is granted the relief herein demanded, will seriously and irreparably injure the plaintiff and all other stockholders of said corporation and defeat the rights of a majority thereof. That the said acceptance of said alleged resignation of Gilbert and said alleged election of said O'Keefe were wholly illegal and void. That said Gilbert at the time of the acceptance of his alleged resignation had not made any offer to resign as such director; but was then and is now a director of said corporation, and entitled to exercise all the rights and privileges thereof. That the defendant O'Keefe is now purporting to act as a director of said corporation, although never legally elected as such, and that he has at all times herein mentioned been merely a dummy and nominee of the defendant Coyle, and without any actual interest whatever himself in said Provident Society, or the share of stock now standing on its books in his name. That on October 14, 1907, Gilbert delivered to the directors a letter stating: "I hereby tender my resignation as a member of the board of directors of the society." That said offer to resign was presented to the board at its meeting on October 17, 1907, whereupon, on motion, the said board unanimously voted to postpone consideration of the same. That on October 25, 1907, Gilbert addressed and delivered to the board a communication addressed to the secretary stating:

"About ten days ago, at the request of Mr. Coyle, present chairman of the finance committee of this company, I sent him my resignation as a director of this company. Since then conditions have so materially changed that I feel it my duty towards this company and its policy holders, for the time being at least, to withdraw such resignation. I therefore inform you that I do withdraw such resignation, and request that you return the same to me."

That on October 25, 1907, the secretary of the defendant returned to Gilbert his original letter tendering his resignation, and stating:

"In this connection, I may state that your resignation has not been accepted by the board of directors."

That on and continuously subsequent to October 17, 1907, said Gilbert has attended regular and special meetings of the board of directors, and has voted as a director, upon all questions coming before the said board, without any objection or protest coming from any other member of said board, and has continued to be and act as such di-

rector.    That, notwithstanding the said Gilbert's withdrawal of his said offer to resign, and such continued action by said Gilbert as such director, the defendants Coyle, Grady, McSorley, Brumm, Moore, Wurtz, Sulger, and the said Phillips, constituting a majority of said board, in pursuance of such unlawful conspiracy, and unlawfully and illegally, on March 27, 1908, with full knowledge of all the facts aforesaid of said Gilbert's withdrawal of his said offer to resign, and over the protest of said Gilbert, adopted a resolution at a special meeting of the board at 11 a. m. on that date "that the resignation of William T. Gilbert be accepted."    That the said persons then constituting a majority then voted in favor of said resolution, and the defendants Woodruff, Gilbert, Vrooman, Hubbard, and plaintiff voted against the same.    That the defendant Orlando F. Thomas did not vote upon the said resolution, although present, and the defendant Edward R. Thomas was not present.    That the defendant Grady, as president, declared the resolution carried and that the said resignation of said Gilbert had been accepted.    That in said meeting Gilbert protested in every way against the action of the board and said resolution, and gave all of said defendants full notice in every respect of his withdrawal of the said offer to resign.    That on March 27, 1908, at 2 o'clock p. m., the said persons, in pursuance of said conspiracy, caused a second special meeting of the board of directors to be held. That said special meeting was held in pursuance of a notice given and dated March 20, 1908, wherein and whereby the said meeting was stated to be called for the purpose of filling any vacancies in the board, and for the consideration of any further resignations that may be offered.    That at the date of said notice no vacancies existed in the said board.    That at 2 p. m. on said date said Gilbert appeared and protested against the failure of the defendant Vrooman as secretary of the said company to call his name upon the roll call as a director, and delivered to the members of the said board of directors then present a protest in writing against the said alleged acceptance of his resignation.    That the president and secretary refused to recognize the defendant Gilbert as a director at the said meeting, and that upon motion of the defendant Moore, seconded by the defendant Brumm, the following resolution was by a vote of said eight persons purported to be adopted and passed by said board:

"Resolved, that James B. O'Keefe, of 254 Fulton Street, Brooklyn, New York, be elected a director, vice William T. Gilbert, resigned."

That at the time of the defendant O'Keefe's said alleged election defendant Gilbert remained, and still remains, a director.    That there was no vacancy in the said board, and the alleged election of said O'Keefe was wholly illegal and void.    That nevertheless the said O'Keefe pretended to act and is now acting as a director of said society, and the defendant Gilbert is excluded by the said defendants from exercising his rights and privileges as a director.    That the terms of office of the defendants Coyle, Grady, and Wurtz will expire on April 2, 1908, at which time, in accordance with the by-laws, an annual meeting of the stockholders thereof will be held for the purpose of electing three directors to take the places of said retiring di-

rectors. That a large majority of the stockholders are opposed to the said Coyle, and will vote at said annual meeting in favor of the nominees as directors wholly independent of the influence and directions of said Coyle. That the defendants Woodruff, Vrooman, Hubbard, Gilbert, and plaintiff are not subject to the influence or directions of said Coyle. That they, with the three new directors to be elected, will constitute a majority of said board, and, under the by-laws, have the power to elect new officers therein in the places of Grady as president and Coyle as vice president. That if the defendant O'Keefe continues to act as director, and the said defendants continue to exclude Gilbert from so acting, the said Coyle, in pursuance of such conspiracy and agreement, will be able and actually will control the affairs and management of the society, notwithstanding the election of three new directors by the stockholders on April 2d, and will re-elect himself as vice president and Grady as president, to the great and irreparable damage of the plaintiff and other stockholders and of the policy holders of the said society. That, in pursuance of said conspiracy, the said persons at the special meeting of the board of directors held at 2 p. m. on March 27th caused John W. Phillips to tender his resignation as a director, and the said board to accept the same, and, in pursuance of said conspiracy, caused a further special meeting of said board to be held at 10 a. m. on March 28th. That said Coyle presented to said meeting a tender of his resignation as director for the term ending April 2d. That at said meeting Coyle, Grady, McSorley, Brumm, Moore, Wurtz, Sulger, and O'Keefe voted in favor of the election of Coyle to fill the vacancy created by the resignation of Phillips, whereupon Coyle's resignation for the term ending April 2d was accepted. That, in further pursuance of said conspiracy, the said defendants intended, and will, unless enjoined from so doing, hold a second special meeting of the board on March 30th at 2 p. m., and elect the defendant Wurtz for the term extending until 1909, which they will cause to be created by the resignation of some other of the parties to such conspiracy. That, in further pursuance of such conspiracy, defendant Grady, as president, has caused further special meetings of said board to be called for March 30th at 11 a. m. and 2 p. m., respectively, for the purpose of acting on any resignations that may be offered and filling any vacancies that may exist, and that defendants, unless enjoined, will at said special meeting elect the defendant Grady to fill a vacancy in said board for a term of one or two years, created by the resignation of one of said defendants, who now holds a directorship for a term which will not expire until 1909 or thereafter. That said defendants are each demanding and collecting $10 for attendance at each of said special meetings. That said special meetings are being held and will be held unlawfully and fraudulently for the private interests of said Coyle and for the carrying out of said conspiracy, and not for the purposes of said corporation whatever. That no business of the society has been transacted or will be transacted at said special meetings called in the future, except the alleged acceptance of resignations and election of directors to fill vacancies. That the said Provident Society has in force approximately $80,000,000 of life in-

surance. That all directors of the society are under obligation faithfully to serve the interests of the corporation and stock and policy holders, and to refrain from serving their private interests. That none of said defendants, other than said Coyle, has any actual interest in the corporation. That said Coyle has not visited the office of said corporation during his whole term of office as one of its directors on an average of more than once a week. That, in further pursuance of said conspiracy, the said Coyle has caused a salary of $18,000 per year to be paid to him by the said society as salary as its vice president, notwithstanding the fact that he has devoted substantially no time to the conduct of its affairs. That plaintiff has no adequate remedy at law, and that, unless the relief asked is granted to him by this court, he will be irreparably injured, and the said Provident Society, and all its stockholders and policy holders, will be likewise irreparably damaged and injured. Wherefore he demands judgment (1) enjoining and restraining the defendant James B. O'Keefe from assuming in anyway whatever to hold himself out or to do any act or thing to take any action whatsoever as a director of the Provident Savings Life Assurance Society of New York; (2) enjoining and restraining the defendants Coyle, Grady, McSorley, Brumm, Moore, Wurtz, Sulger, and Vrooman, and each of them, from allowing or permitting the defendant James B. O'Keefe to do any act or thing as a director of said society; (3) enjoining the defendants Coyle, Grady, McSorley, Brumm, Moore, Wurtz, Sulger, Vrooman, and O'Keefe, and each of them, from refusing to permit and allow the defendant William T. Gilbert to act in every way as, and to exercise all the rights and privileges of, a director of the defendant society; (4) annulling and declaring null and void the alleged election of the defendant James B. O'Keefe on March 27, 1908, as a director of said society.

Upon this complaint and voluminous affidavits, an order was entered restraining the defendants Coyle, Grady, McSorley, Brumm, Moore, Wurtz, Sulger, and Vrooman, and each of them, pending the trial of this action, from allowing or permitting any person to do any act or thing, or to assume to act as a director of the society, in the place of or as the successor of William T. Gilbert, and enjoining each of said individual defendants and the defendant society, and each and every of its directors and officers, pending the trial of this action, from refusing to permit and allow the defendant Gilbert to act in every way as, and to exercise all the rights and privileges as, a director of the said society. From said order, the society and the defendants Coyle, Grady, Brumm, Moore, Wurtz, Sulger, and McSorley appeal.

Section 603 of the Code of Civil Procedure provides that:

"Where it appears from the complaint that the plaintiff demands, and is entitled to, a judgment against the defendant restraining the commission or continuance of an act, the commission or continuance of which during the pendency of the action, would produce injury to the plaintiff, an injunction order may be granted to restrain it. The case provided for in this section is described in this act, as a case where the right to an injunction depends upon the nature of the action."

Section 604 provides that:

"In either of the following cases, an injunction order may also be granted in an action: (1) Where it appears by affidavit, that the defendant, during the pendency of the action, is doing, or procuring, or suffering to be done, or threatens, or is about to do or to procure or suffer to be done, an act in violation of the plaintiff's rights respecting the subject of the action, and tending to render the judgment ineffectual, an injunction order may be granted to restrain him therefrom."

It is under one or the other of these two provisions of the Code alone that the order appealed from can be justified. It is for that reason that it has been deemed necessary to make so voluminous a résumé of the complaint herein, in order to determine whether the plaintiff has brought himself within the prescribed conditions. It is apparent from the papers in the case that there exists a desperate fight for the control of this insurance company, made possible by the fact that it is a domestic stock corporation, that its directors are elected by the stockholders, and that their terms of office expire at different periods. When Mr. Coyle entered into his contract for the purchase of sufficient shares of stock to control the corporation, under the obligation upon his part to pay $100,000 in cash and $1,000,000 on notes secured by the shares of stock as collateral, he received eight shares for the purpose of qualifying eight directors who would constitute a majority of the board. Having defaulted upon his obligations to pay, the holders of those shares, as collateral to his obligations, have caused the same to be sold, and the present holders of such shares would control the corporation and could elect directors representing them, were it not for the fact that only three regular vacancies fell in at the time of the annual meeting. If Mr. Coyle could succeed in holding eight directorships which did not expire at said meeting, he would still remain, at least for a year, in control of the corporation, although owning and controlling only eight shares out of a total capital stock of 1,250 shares. Thus, by reason of the peculiar situation, the interests of the policy holders represented by $80,000,000 of outstanding insurance would be in the hands of a majority of the board of directors, none of whom were policy holders and who represent but eight shares of stock as against 1,242 opposed to their management.

Realizing the possible results of such a situation, not only to the owners of the vast majority of the stock of the corporation, but to the holders of policies of insurance therein, appreciating that this struggle is one for the financial control of the corporation as a business proposition, regardless of its character as an insurance company, and the rights of the policy holders and their proposed beneficiaries, we have examined this case with the gravest concern in the attempt to discover whether a case is presented for the interposition of a court of equity. Reduced to its ultimate analysis, the plaintiff, a stockholder, asks a court of equity to determine that one man is a director of the corporation of which plaintiff is a stockholder, and that another man is not. He asks that the court enjoin one man from acting as a director, to enjoin the majority of the board from permitting him to act as a director, and to enjoin the majority of the board from refusing to permit and allow the other man to act as a director. The order ap-

pealed from grants the relief demanded by the complaint, and not only enjoins the majority of the board, but the defendant company and each and every of its directors and officers, from refusing to permit and allow the defendant Gilbert from acting as a director. In other words, stripping the complaint of its verbiage and its charges of conspiracy, a court of equity is asked to determine the title to office of a director of a corporation. Irrespective of the merits of the controversy, and regardless of the possible consequences, we must determine first whether the court has jurisdiction. If it has not, we have no business to consider the merits, and may not be swayed by the consequences. It may be noted, further, that this is not an action brought by either of the claimants to the office in dispute, but is brought by a stockholder for the purpose of determining such rival claim. For such an action no precedent is cited, either at law or in equity.

In People v. Albany & Susquehanna R. R. Co., 57 N. Y. 161, the court said:

"Elections to office, whether public or corporate, were never in England nor in this state, up to the date of the Code, matters of equitable consideration. They depended only upon legal inquiries and legal principles, and no instance can be found in which title to office has been dealt with by the courts on any other basis. A few cases in which this rule has been recognized rather than expressly decided may be referred to: Tappan v. Gray, 9 Paige, 507, affirmed 7 Hill, 259; Mickles v. Rochester City Bank, 11 Paige, 124, 42 Am. Dec. 103; People v. Utica Insurance Company, 2 Johns. Ch. 371; Attorney General v. Bank of Niagara, Hopk. Ch. 354; Mott v. Connolly, 50 Barb. 516; Atty. Gen. v. Clarendon, 17 Ves. Jr. 491. The latter cases, indeed, go further, and deny the jurisdiction of the courts of equity in regard to the election or removal of any description of corporators or in aid of proceedings by information in the nature of quo warranto in courts of law, thus showing that no form of equitable relief could be founded on a disputed title to corporate office. The Code has introduced no change in this rule."

In People ex rel. Corscadden v. Howe, 177 N. Y. 499, 69 N. E. 1114, 66 L. R. A. 664, Cullen, J., said:

"Having determined that the attempted removal of Mr. Corscadden from his office as superintendent of the penitentiary was illegal, the only question which remains to be decided in the injunction action is whether such an action can be maintained. We are of the opinion that it cannot. As early as the case of Tappan v. Gray, 9 Paige, 507, it was held by the chancellor that the court of chancery had no jurisdiction to enjoin at the suit of the incumbent of an office the intrusion of a hostile claimant illegally appointed to the office. This decision was unanimously affirmed by the Court of Errors. 7 Hill, 259. * * * The doctrine declared in Tappan v. Gray has been almost invariably followed in this state; there being only one reported case to the contrary. * * * The exception referred to is Palmer v. Foley, 45 How. Prac. 110. * * * We are not impressed with the theory on which the superior court upheld the action. * * * Reis v. Rohde, 34 Hun, 161, was an action between a church and certain persons claiming to be trustees who it was sought to enjoin from acting as such. The jurisdiction of the court to grant the injunction seems to have been upheld on the theory that the church itself had recognized the plaintiffs as trustees, and not the defendants. Indeed, the principle that a court of equity will not entertain jurisdiction over contests to public office has been so fully recognized in this state that there seems to be no direct authority in this court on the question, though several instructive cases may be found—citing People v. Albany & Susquehanna R. R. Co., supra, and other cases. * * * If ever public convenience would have authorized the intervention of equity in a controversy beyond its cognizance, that controversy was the one passed on by this court

in People v. Albany & Susquehanna R. R. Co., 'where a war of injunction' had caused in a part of the state no small degree of public disorder, yet the court there held that no case of equitable cognizance was presented."

In Washington Lighting Company v. Dimmick, 41 App. Div. 596, 58 N. Y. Supp. 682, the action was to enjoin defendants from representing themselves to be the officers of the company or interfering with its business or property. The defendants concededly had been the president and treasurer of the company. The controversy was whether they were still. The court at Special Term held that section 1948 of the Code of Civil Procedure provides the form of remedy appropriate to such a case as this, where the corporation is a domestic one. A court of equity has no inherent power to try the disputed title to corporate office, and to enjoin one in possession from the exercise of its functions at the suit of a rival claimant. Such may be done and judgment of ouster rendered only in an action of quo warranto instituted by the Attorney General in the name of the people. While this action purports in its title to be brought by the corporation, it is in reality a contest of rival claimants for its control, and it is consequently the kind of an action that it was there said could not be maintained. This court said:

"We think the court below was right in denying this motion upon the ground stated in the opinion of the learned judge who heard the application."

The learned counsel for the respondent admits the general rule that a court of equity will not take jurisdiction of a case for the sole purpose of determining title to office, but claims the benefit of another rule, which is that, where a court of equity has jurisdiction of a case upon some recognized equitable ground, then, as incidental to said jurisdiction, it will not hesitate to determine the question as to who is the rightful owner of title to the office in question, either for the purpose of interlocutory or final relief.

If it be conceded that such rule has the support of authority, the complete answer is that in the case at bar there is no opportunity for its application. The complaint in this action, brought by a stockholder, sets forth no facts stating a cause of action cognizable in a court of equity. Nothing is sought to be determined but the title to the office of one director. The order enjoins a person, a de facto director, under color of an election, from acting as such, and commands the recognition of another person whose resignation, under color of the action of the board, has been accepted, and this is all.

I do not think that the plaintiff is entitled to bring the action at bar, nor do I think that the action is cognizable in equity. It is not an action in quo warranto, nor is it a summary proceeding to determine the election of directors, and therefore the order appealed from, not being authorized by either section 603 or section 604 of the Code of Civil Procedure, heretofore cited, must be reversed, with $10 costs and disbursements, and the application denied, with $10 costs and disbursements. All concur.